Argued and submitted January 8, reversed and remanded April 1, 2009

In the Matter of C. A.,
a Minor Child.

STATE ex rel DEPARTMENT OF HUMAN SERVICES,
*Respondent,*

*v.*

M. A.,
*Appellant.*

Lane County Circuit Court
00655J; Petition Number 00655J03;
A139693 (Control)

In the Matter of D. A.,
a Minor Child.

STATE ex rel DEPARTMENT OF HUMAN SERVICES,
*Respondent,*

*v.*

M. A.,
*Appellant.*

Lane County Circuit Court
00658J; Petition Number 00658J03;
A139696

205 P3d 36

Megan L. Jacquot argued the cause and filed the brief for appellant.

Laura S. Anderson, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

.

## ARMSTRONG, J.

In this dependency case, mother appeals from judgments[1] directing a change in the permanency plans for two of her children, D and C, from reunification to "another planned permanency living arrangement" (APPLA), specifically, long-term foster care.[2] *See* OAR 413-070-0520 - 413-070-0560 (describing appropriate use of APPLA). Mother raises three assignments of error, one of which is that the judgment did not comply with the requirements of ORS 419B.476(5)(a) and (f), which require a court to make specific findings when it approves a change of that kind in a plan. Because we agree with mother as to that assignment of error, we reverse and remand.

We take the facts from the record. D and C, then seven- and four-year-old boys, were removed from their mother's care on April 23, 2003. On June 19, 2003, the court established dependency jurisdiction over the boys on the basis of mother's admission that,

"[d]espite numerous interventions by DHS and other community agencies, the mother has been unable and/or unwilling to demonstrate adequate decision-making and/or [judgment] that would protect the child from risk of harm."

Mother was required to undergo a psychological evaluation and to comply with recommended treatment.

At the time of the first permanency hearing, on April 15, 2004, the children were living in mother's home as wards of the court.[3] That arrangement was continued at a permanency hearing held on March 20, 2006. However, on September 6, 2007, the children were ordered back into foster

---

[1] With the exception of the children's names and case numbers, the judgments at issue—as well as the underlying plans—are identical; for convenience only, we generally use the singular number throughout the remainder of this opinion.

[2] APPLA is "any permanency plan other than reunification, adoption, guardianship, or permanent placement with a fit and willing relative[,]" OAR 413-070-0520; it is the "least preferred permanency plan for a child[,]" OAR 413-070-0532. *See also* ORS 419A.004(18) (defining "planned permanent living arrangement" as "an out-of-home placement other than by adoption, placement with a relative or placement with a legal guardian that is consistent with the case plan and in the best interests of the ward").

[3] It is unclear from the record when the children were returned to mother's care.

care, after mother was late picking C up from school, the police were called, and mother was subsequently arrested on an outstanding warrant. Mother was later convicted of fraud and served several months in jail and in a community corrections center. She was released sometime in the spring of 2008 and placed on "house arrest" with an electronic monitoring device; that situation was expected to end in October 2008.

On May 22, 2008, the Department of Human Services (DHS) asked the court to approve an alternate plan of permanent foster care for the boys. After a hearing on the matter, the court entered a judgment determining that it was *not* in the best interest of the children for DHS to move to a plan of *permanent foster care* at that time. It also ordered mother, on her release from custody, to "[m]aintain safe and stable housing as approved by DHS/CWP," and it continued the matter to July 8, 2008.

At the July 8 hearing—which resulted in the judgment that is the subject of this appeal—DHS asked the court to approve a plan of *long-term foster care* for the children because return to mother was no longer appropriate and the children did not agree to a plan of permanent foster care. According to the caseworker's "Report and Recommendation," dated July 2, 2008, mother was living with her current husband, a convicted child sex offender; father (mother's ex-husband); her brother; her mother; and her mother's boyfriend. The report noted DHS's extensive history with the family "attempting to address issues of lack of supervision, threat of harm, and chronic neglect," and stated,

> "[t]here is a long history of intergenerational sex abuse and incest in this family. * * * [Mother] continues to want to reintegrate her husband * * * into her children's lives, despite the risk he poses to her children."

It concluded that mother "[cannot] care for the boys in a healthy and safe manner" and recommended that the plan be changed to long-term foster care.

Mother opposed the change in plan, arguing that it was premature, given the children's strong attachment to her and her conscientious participation in services.[4] She also

---

[4] Father, who is 80 years old and in poor health, also opposed the plan; he is not a party on appeal.

argued that DHS had been deficient in its efforts to maintain that attachment, and she objected to DHS shifting to APPLA without following the required procedures, particularly OAR 413-070-0540, which requires the convening of a team, preferably including the child's parents, to be involved in the decision-making process, and OAR 413-070-0548(1), which requires a service plan detailing how the child's attachment to and permanent ties with family members will be maintained. The state responded that, under the applicable Oregon Administrative Rules, parents are not required to be included in the APPLA decision-making process and the service plan need not be developed until after the court has approved the alternate plan.

In making its ruling, the trial court first noted the "extensive history" of the cases involving the children, stating:

> "The [c]ourt is not going to try to catalog everything that is in the files regarding the situation that not only [C] had been in, nor catalog all of the issues with [mother] and [father]. The record speaks for itself in that regard."

The court then found,

> "based on the information before it, both historically and the information that is most recently provided that the agency has made reasonable efforts to return the children to their parents.
>
> "That it is in the best interests of both of these children that the permanent plan of long term foster care return to a parent [sic[5]] and another planned living arrangement is approved."

The court also ordered DHS to present to the parents, within 30 days, a written service plan in compliance with the Oregon Administrative Rules.

The court subsequently issued a written judgment reflecting its oral ruling and providing, in part:

---

[5] That jumbled phrasing does not appear in the written judgment and is possibly the result of an error in transcription; in any event, it is of no import to our resolution of this appeal.

"The court having heard from the parties and based thereon it is the finding of the court that Department of Human Services has made reasonable efforts to effect the return of the child to the parents and further efforts to reunify the family would not be likely to succeed within a reasonable time and the plan for the child shall be changed from Return to Parent to Another Planned Living Arrangement (APLA), long-term foster care."

The judgment further noted that the court "takes judicial notice of the court report, and the contents therein, received by the court July 3, 2008."

On appeal, mother raises three assignments of error: (1) the trial court erred in finding that changing the plan to long-term foster care was in the best interests of the children while mother and the children were continuing to make progress; (2) the judgment does not include the findings required under ORS 419B.476(5)(a) and (f)[6] (requiring findings) and "this court should not change the plan on the basis of that Judgment"; and (3) the trial court abused its discretion in ordering the change in plan without first requiring DHS to follow the procedures outlined in the Oregon Administrative Rules for effecting a change to APPLA. *See* OAR 413-070-0520 to 413-070-0560.

The state responds that the court properly ordered the change because the children had been under the jurisdiction of the court for more than four years; while in mother's care, they had been subjected to sexual abuse, chronic neglect, and threat of harm; and, despite services, mother continued to maintain an unsafe and unstable household, and failed to recognize the danger to her children created by her association with sex offenders. It further argues that mother's second assignment is an unpreserved claim that we should decline to review as "plain error" and, with respect to mother's third assignment, that the court did not abuse its discretion in allowing a change in the permanency plan before the meeting described in OAR 413-070-0540 or the

---

[6] Mother's assignment of error refers to paragraphs (5)(a) and (d); however, in the body of her argument, she refers to paragraphs (5)(a) and (f). Because this case involves the court's determination of APPLA as the permanency plan for the children, (f) is the correct paragraph; paragraph (d) applies when the court determines that adoption is the appropriate permanency plan.

development of a service plan consistent with OAR 413-070-0548 had occurred.

As explained below, we agree with mother that the judgment failed to comply with the requirements of ORS 419B.476(5)(a) and (f), and, consequently, we reverse and remand to the juvenile court for further proceedings. As a result of that disposition, we need not address mother's remaining assignments of error.

ORS 419B.476(5) provides, in part:

"The court shall enter an order within 20 days after the permanency hearing. In addition to any determinations or orders the court may make under subsection (4) of this section, the order shall include:

"(a)  The court's determination required under subsections (2) and (3) of this section, including a brief description of the efforts the department has made with regard to the case plan in effect at the time of the permanency hearing;

"* * * * *

"(f)  If the court determines that the permanency plan for the ward should be a planned permanent living arrangement, the court's determination of a compelling reason, that must be documented by the department, why it would not be in the best interests of the ward to be returned home, placed for adoption, placed with a legal guardian or placed with a fit and willing relative[.]"

Paragraph (5)(a) thus also implicates subsections (2) and (3) of the statute. Subsection (3) is not pertinent to this case; however, subsection (2) provides, in part:

"At a permanency hearing the court shall:

"(a)  If the case plan at the time of the hearing is to reunify the family, determine whether the Department of Human Services has made reasonable efforts * * * to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns.

"* * * * *

"(d) Make the findings of fact under ORS 419B.449(2)."[7]

■ As always, we first must determine whether mother's argument was preserved, and, if not, whether it constitutes "error apparent on the face of the record," also known as "plain error." ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court * * *, provided that the appellate court may consider an error of law apparent on the face of the record."). An error is "plain" if it is one of law, is not reasonably in dispute, and does not require consideration of matters outside the record. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). If the alleged error meets those criteria, we then must determine whether it is appropriate for us to exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

In supplemental briefing, mother argues, essentially, that preservation is not required "[w]hen the court makes general comments, but not specific findings, orally, and then fails to make written findings in the Judgment produced within 20 days after the hearing pursuant to ORS 419B.476(5)."[8] In the alternative, mother urges us to exercise

---

[7] ORS 419B.449(2), in turn, requires the court to make certain findings at the conclusion of a review hearing; the precise findings required depend on the current status of the child and the nature of the court's decision. However, mother does not argue that the court erred by failing to make the findings required by ORS 419B.449 at the conclusion of the hearing in this case. Neither does mother argue that the court erred in failing to include the ORS 419B.449 findings in the written judgment. Hence, we do not consider either issue.

[8] In her initial brief, mother did not make that argument, but instead urged us to review the court's failure to make written findings under ORS 419B.476(5) as plain error. In contrast, the state argued that, although the trial court did not make written findings in the judgment "on all statutorily[ ]required factors," mother did not request the court to do so at the hearing and "did not object to the court's failure to do so"; thus, in the state's view, the issue was not preserved. The state further argued that, under *State v. Bucholz*, 317 Or 309, 321, 855 P2d 1100 (1993), the court's failure to enter findings could not be reviewed as plain error.

The day before oral argument in this case, we decided *State ex rel Dept. of Human Services v. J. N.*, 225 Or App 139, 200 P3d 615 (2009). In *J. N.*, we rejected the state's position that *Bucholz* bars our plain error review of a trial court's failure to make the findings required under ORS 419B.476(2)(d) and ORS 419B.449(2) and (3). 225 Or App at 144-45. Indeed, assuming that the issue was unpreserved, we concluded that the trial court plainly erred in not making the statutorily required findings but that, consistent with *Bucholz*, it was not appropriate for us to exercise

our discretion to review the error as plain error. In either event, mother asks that the case be remanded to the juvenile court for further findings "and/or reconsideration of the plan."

The state agrees that the court's failure to make all of the statutorily required findings constitutes plain error under *State ex rel Dept. of Human Services v. J. N.*, 225 Or App 139, 200 P3d 615 (2009), but argues that we should decline to exercise our discretion to correct the error. In support of that argument, the state points to the following: (1) mother could have requested the required findings after the initial judgment issued or sought to modify the initial judgment under ORS 419B.923(7), but did not do so; (2) by taking judicial notice of the caseworker's court report, "the requisite information was included in the judgment, thus obviating the need for this court to correct any error"; and (3) "the record at the hearing otherwise satisfies the required statutory findings."

We agree with mother that, under these circumstances, preservation is not required. As the Supreme Court recently explained,

> "[p]reservation rules are pragmatic as well as prudential. What is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court. * * * *In some circumstances, the preservation requirement gives way entirely, as when a party has no practical ability to raise an issue. See, e.g., McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 95 n 6, 957 P2d 1200, *modified on recons*, 327 Or 185, 957 P2d 1200 (1998) (party not required to take action to preserve an issue that first arose when court issued its order)."

*Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008) (emphasis added; footnote omitted); *see also State v. Gutierrez*, 170 Or App 91, 94, 11 P3d 690 (2000) (principles underlying preservation requirements not implicated where trial court *sua sponte* entered a judgment of dismissal with

---

our discretion to correct it. *Id.* at 145. In light of *J. N.*, we asked the parties in this case to submit supplemental briefing on the issue.

prejudice and, hence, "there [was] no opportunity to bring the alleged error to the court's attention before it rule[d]"); *cf. State v. Hammond,* 218 Or App 574, 584, 180 P3d 137 (2008) (where statute required findings to be made "on the record in open court," defense counsel had a "complete contemporaneous opportunity" to address the trial court's noncompliance; failure to do so rendered defendant's claim of error unpreserved).

Here, the statute dictates that the required findings be made—not at the time of hearing—but in an order issued within 20 days after the hearing. ORS 419B.476(5). Until that order issued, mother had no way of knowing that the court would enter a judgment that did not comply with the statute. Indeed, it was not unreasonable for mother to assume that the court, in entering the written judgment, would make the findings necessary to support its oral ruling. In other words, mother had "no practical ability to raise [the] issue," *Peeples,* 345 Or at 220, because the issue did not arise until the court entered the judgment. Because the error in the judgment that mother raises on appeal is not one that she failed to preserve, it is not one that is subject to the constraints of plain error review.

Turning to the merits, as framed by mother's argument, *see* 227 Or App at 178-80, the relevant statutes required the judgment to include the following: (1) the court's determination as to whether DHS had made reasonable efforts to make it possible for the children to safely return home, ORS 419B.476(5)(a), (2); (2) a brief description of DHS's efforts with regard to reunification, the case plan in effect at the time of the hearing, ORS 419B.476(5)(a); (3) the court's determination whether mother had made sufficient progress to make it possible for the children to safely return home, ORS 419B.476(5)(a), (2)(a); and (4) a "compelling reason,[9] that must be documented by [DHS], why it would not be in the best interests of the [children] to be returned home, placed for adoption, placed with a legal guardian or placed with a fit and willing relative[,]" ORS 419B.476(5)(f).

---

[9] For purposes of APPLA, " '[c]ompelling reason' means a convincing and persuasive reason." OAR 413-070-0524(2).

Here, the judgment fulfilled the first requirement—the "reasonable efforts" determination and, arguably, the third—lack of sufficient progress on mother's part. However, it indisputably failed to include a brief description of DHS's efforts or, most significantly, a "compelling reason" why it was not in the best interest of the children for them to be returned home or placed in another permanency option, such as adoption, guardianship, or placement with a relative.

■ Even the state agrees that the judgment did not include all of the statutorily required findings. In the state's view, however, the judgment, "[a]lthough not ideal," nonetheless comports with the statutory requirements because the findings were "incorporated into the order when the court included in the judgment what it 'heard from the parties' as the basis for its findings of reasonable efforts and insufficient progress by mother" and because the court took judicial notice of the court report and its contents.

We disagree. The fact that the judgment refers to what the court "heard from the parties" and states that the court took judicial notice of the caseworker's report, establishes, at most, the information on which the court relied in making its decision. It does not, without more, reflect the court's reasoning or demonstrate the basis for the court's ultimate decision, much less set forth, as required in this case, a "compelling reason" why it is in the children's best interest to move to a permanency plan of long-term foster care.[10] Thus, it is inadequate to meet the requirements of the statute.

By requiring that the court make such findings, the legislature has expressed its intent that the trial court carefully evaluate DHS's decision to change a permanency plan for a child in order to ensure that the decision is one that is most likely to lead to a positive outcome for the child. That is particularly the case when the recommended change is to APPLA, which is the "least permanent" and, consequently, "least preferred" of the permanency plans available for a child in substitute care. OAR 413-070-0528(6) ("APPLA is the least permanent of all the permanency plans and must be

---

[10] We note that the court did not incorporate by reference or otherwise adopt the caseworker's court report; in any event, that alone would have been insufficient in this case to satisfy the requirements of the statute.

used only when the other plans have been ruled out."); OAR 413-070-0528(7) ("When APPLA is utilized as a child's permanency plan, the plan should be regularly reviewed to determine whether a more permanent plan has become appropriate for the child."); OAR 413-070-0532 ("APPLA is the least preferred permanency plan for a child."); OAR 413-070-0536(1) (providing that "[t]he Department may identify APPLA as a permanency plan for a child only if the Department has determined that there is a *compelling reason* * * * that it would not be in the best interests of the child to be placed on a permanent basis" with a parent, in an adoptive home, in a guardianship, or in a permanent placement with a fit and willing relative (emphasis in original)). Accordingly, we reverse and remand to the trial court for further proceedings consistent with this decision.

Reversed and remanded.