Argued and submitted December 10, 2010, affirmed March 9, 2011

## In the Matter of R. R.,
## a Child.

### DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

### H. R.,
*Appellant.*

Coos County Circuit Court
09JV0042;
Petition Number 023109RR;
A146143

250 P3d 427

Holly Telerant, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief

Defender, Legal Services Division, Office of Public Defense Services.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

ORTEGA, P. J.

**ORTEGA, P. J.**

Mother appeals a permanency judgment that changed the permanency plan for her son, R, from reunification to adoption. Her arguments on appeal concern, first, the sufficiency of the juvenile court's findings regarding reasonable efforts by the Department of Human Services (DHS) to reunify the family and, second, the court's determination that there was no reason to defer the filing of a petition to terminate mother's parental rights. Mother challenges the juvenile court's legal conclusions, which we review for errors of law. *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010). For the reasons set forth below, we affirm.

To frame the issues, we need only to describe the permanency judgment and related documents. The permanency judgment incorporates a letter opinion in which the court noted that mother's mental health issues have worsened over time and that, despite DHS's attempts to help her, mother "will not and cannot change." By checking boxes and circling words in the permanency judgment form, the court indicated its finding that reasonable efforts have been made to make possible the child's safe return home and to support mother's efforts to comply with the plan. The court adopted the "agency's report/petition/probable cause statement dated 5-26-10 as the Court's written findings for this section."

■  That DHS court report, which was admitted as an exhibit at the permanency hearing and which also is contained in the trial court file, has a cover page with identifying information, followed by slightly more than five pages of text. The report describes, among other things, counseling that mother received at Coastal Center, mother's refusal of a referral for a medication management assessment, and the results of a psychological evaluation conducted about two months before the permanency hearing. Under the heading "recommendations," the report states:

> "We request that the Court make the determination that reasonable efforts, in light of the child's and parent's circumstances, have been made to make it possible for the child to be safely returned to the home, and in supporting

the parent's efforts to comply with the plan. Reasonable efforts include:

"Case management; Psychological evaluation; Face to face contacts with child, parent, and foster parents; Coastal Center counseling; Staffing with Department of Justice; Medical card for child; Visitation."

Mother appeals from the permanency judgment. In her first assignment of error, she contends that the juvenile court erred by not including in the judgment, as required under ORS 419B.476(5)(a), a "brief description of the efforts [DHS] has made" to reunify the family. She argues that, under *State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 205 P3d 36 (2009), the permanency judgment is insufficient because the court did not include a brief description of DHS's efforts on the face of the judgment, did not attach the referenced DHS court report to the judgment, and did not indicate the specific page of the report relied upon as a description of reasonable efforts. DHS contends that the judgment adequately incorporates findings that satisfy the statutory requirement by way of the DHS court report, either standing alone or taken in conjunction with the juvenile court's letter opinion. We conclude that the permanency judgment contains an adequate description of reasonable efforts.

We begin our analysis with the statute requiring the findings at issue. ORS 419B.476 provides, in part:

"(2)   At a permanency hearing the court shall:

"(a)   If the case plan at the time of the hearing is to reunify the family, determine whether the Department of Human Services has made reasonable efforts * * * to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns.

"* * * * *

"(5)   The court shall enter an order within 20 days after the permanency hearing. In addition to any determinations or orders the court may make under subsection (4) of this section, the order shall include:

"(a)    The court's determination required under subsections (2) and (3) of this section, including a brief description of the efforts the department has made with regard to the case plan in effect at the time of the permanency hearing[.]'"

We examined that statute in *M. A.*, in which the juvenile court ordered a permanency plan of "another planned permanen[t] living arrangement" (APPLA). 227 Or App at 175. In the permanency judgment, the court found that DHS had made reasonable efforts, and it took judicial notice of a court report. The judgment, however, lacked both the required description of DHS's efforts and the determination, required by ORS 419B.476(5)(f), of a compelling reason why a permanency plan other than APPLA was not in the children's best interests. 227 Or App at 183. Concluding that the juvenile court's findings were insufficient, we explained:

"The fact that the judgment refers to what the court 'heard from the parties' and states that the court took judicial notice of the caseworker's report, establishes, at most, the information on which the court relied in making its decision. It does not, without more, reflect the court's reasoning or demonstrate the basis for the court's ultimate decision, much less set forth, as required in this case, a 'compelling reason' why it is in the children's best interest to move to a permanency plan of long-term foster care. Thus, it is inadequate to meet the requirements of the statute."

*Id.* (footnote omitted). In a footnote, we observed that the juvenile court "did not incorporate by reference or otherwise adopt the caseworker's court report; in any event, that alone would have been insufficient in this case to satisfy the requirements of the statute." *Id.* at 183 n 10.

Relying on *M. A.*, mother argues that the permanency judgment here suffers from similar deficiencies. *M. A.*, however, involved a complete failure to make a determination of a compelling reason that a particular permanency plan would be in the children's best interests. We did not hold in *M. A.* that a juvenile court may never incorporate by reference or adopt a report in a permanency judgment.

Here, unlike in *M. A.*, the juvenile court did not merely refer to information upon which it relied in finding that reasonable efforts had been made. Rather, it found that

DHS had made reasonable efforts and adopted DHS's court report dated May 26, 2010, "as the Court's written findings" for that section of the permanency judgment. The report contains a request for a finding of reasonable efforts, followed by a summary description of those efforts. On this record, there is no ambiguity about which report the court adopted as its written findings, nor is the report so lengthy or unclear as to preclude its use as a "brief description." Here, the juvenile court's adoption of DHS's court report as its written findings concerning reasonable efforts was sufficient to comply with the requirement of ORS 419B.476(5)(a) that the judgment include "a brief description of the efforts the department has made with regard to the case plan in effect at the time of the permanency hearing." We therefore reject mother's first assignment of error.

In her remaining two assignments of error, mother contends that the juvenile court erred in its determination that there was no reason, under ORS 419B.498(2), to defer filing a petition to terminate her parental rights. *See* ORS 419B.476(5)(d) (requiring, when the court determines that the permanency plan should be adoption, that the court determine "whether one of the circumstances in ORS 419B.498(2) is applicable"). In mother's view, this case falls within the circumstances described in ORS 419B.498(2)(a), which provides an exception to the requirement to file a petition when "[t]he child or ward is being cared for by a relative and that placement is intended to be permanent." Mother contends that, because R was placed with his maternal grandmother, whom DHS had identified as the adoptive resource, R was being cared for by a relative in a placement that is intended to be permanent. DHS responds that ORS 419B.498(2)(a) refers to a permanent placement with a relative other than an adoption. We conclude that DHS is correct.

The Juvenile Code treats "adoption" and "placement with a fit and willing relative" as two distinct permanency plans. ORS 419B.476(5) requires a permanency judgment to include, among other determinations:

"(b)  The court's determination of the permanency plan for the ward that includes whether and, if applicable, when:

"(A)  The ward will be returned to the parent;

"(B)  The ward will be placed for adoption, and a petition for termination of parental rights will be filed;

"(C)  The ward will be referred for establishment of legal guardianship; or

"(D)  The ward will be placed in another planned permanent living arrangement;

"(c)  If the court determines that the permanency plan for the ward should be to return home because further efforts will make it possible for the ward to safely return home within a reasonable time, the court's determination of the services in which the parents are required to participate, the progress the parents are required to make and the period of time within which the specified progress must be made;

"(d)  If the court determines that the permanency plan for the ward should be adoption, the court's determination of whether one of the circumstances in ORS 419B.498(2)[1] is applicable;

"(e)  If the court determines that the permanency plan for the ward should be establishment of a legal guardianship or placement with a fit and willing relative, the court's determination of why neither placement with parents nor adoption is appropriate;

"(f)  If the court determines that the permanency plan for the ward should be a planned permanent living arrangement, the court's determination of a compelling reason, that must be documented by the department, why it would not be in the best interests of the ward to be returned home,

---

[1] ORS 419B.498(2) provides:

"The department shall file a petition to terminate the parental rights of a parent in the circumstances described in subsection (1) of this section [including, as relevant here, when the child has been in substitute care for 15 months of the most recent 22 months] unless:

"(a) The child or ward is being cared for by a relative and that placement is intended to be permanent;

"(b) There is a compelling reason, which is documented in the case plan, for determining that filing such a petition would not be in the best interests of the child or ward. Such compelling reasons include, but are not limited to:

"* * * * *

"(B) Another permanent plan is better suited to meet the health and safety needs of the child or ward * * *[.]"

placed for adoption, placed with a legal guardian or placed with a fit and willing relative[.]"

ORS 419B.476(5) thus identifies as different permanency plans, requiring different findings, (1) return to a parent, (2) adoption, (3) a legal guardianship or "placement with a fit and willing relative," and (4) a planned permanent living arrangement. *See also* ORS 419A.004(18) (" 'Planned permanent living arrangement' means an out-of-home placement other than by adoption, placement with a relative or placement with a legal guardian that is consistent with the case plan and in the best interest of the ward."). For permanency plan purposes, then, adoption is different from placement with a relative; indeed, if the permanency plan is placement with a relative, the court must explain why adoption is not appropriate. Accordingly, the reference in ORS 419B.498(2)(a) to when "[t]he child or ward is being cared for by a relative and that placement is intended to be permanent" refers to placement with a relative other than an adoption.

That construction of ORS 419B.498(2)(a) is internally consistent and consistent with ORS 419B.476(5). Mother's construction, by contrast, creates an internal inconsistency: The placement with a relative here—which mother contends triggers the application of ORS 419B.498(2)(a)—is a prospective adoption and therefore is certainly "intended to be permanent"—yet the termination of parental rights and subsequent adoption cannot occur, under mother's reading, because the child is placed with a relative in a placement that is intended to be permanent. Planning for adoption by a relative would preclude achieving adoption by a relative, in mother's construction. Although apparently plausible at first glance, mother's construction of ORS 419B.498(2)(a) is not plausible when the statute is considered in context.

Mother does not contend that any other circumstance in ORS 419B.498(2) applies. Accordingly, we conclude that the juvenile court did not err by determining that none of the circumstances in ORS 419B.498(2) was present.

Affirmed.