Submitted January 26, affirmed October 19, 2016

In the Matter of D. J.,
a Youth.
STATE OF OREGON,
*Respondent,*

*v.*

D. J.,
*Appellant.*

Jackson County Circuit Court
110587J;
Petition Number 110587JA;
A156106

384 P3d 164

Caitlin Mitchell filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**FLYNN, J.**

In this juvenile delinquency case, youth challenges the sufficiency of a juvenile court order that approved youth's placement in the custody of the Oregon Youth Authority (OYA). The order followed a hearing at which youth argued that OYA should allow him to live at the home of his maternal grandmother, rather than continue his placement in an OYA facility. On appeal, youth contends that the court's order fails to satisfy ORS 419C.626(3)(a), which requires that the court "enter findings of fact" that "specifically state *** [w]hy continued out-of-home placement is necessary as opposed to *** another placement." Youth argues that "some degree of inference" is required to connect the court's findings to a conclusion that continued out-of-home placement is necessary and that ORS 419C.626(3)(a) "demands more than inferences" as to "why" the out-of-home placement is "necessary." We agree with youth that ORS 419C.626(3)(a) "demands more than inferences," but we conclude that the juvenile court's factual findings satisfy the specificity requirement. We also reject without written discussion youth's argument that the court's findings are not supported by any evidence in the record. Accordingly, we affirm.

## I. APPLICABLE LAW

Before discussing the pertinent facts, we begin with a brief overview of the statutes governing the proceeding out of which this case arises. The juvenile code provides that the court may require the OYA or a private agency with custody of a youth offender to "file reports on the youth offender with the juvenile court." ORS 419C.620. Following receipt of a report, and if requested by the youth's attorney, among others, the court shall hold a hearing "to review the youth offender's condition and circumstances and to determine if the court should *** order modifications in the custody, placement and supervision of the youth offender." ORS 419C.626(1)(a), (b).

The juvenile code further provides that, "[a]t the conclusion of the hearing, the court shall enter findings of fact if the decision is to continue the youth offender in an out-of-home placement in the legal custody of the youth authority or a private agency." ORS 419C.626(3). The statute

further specifies certain details that "[t]he findings shall specifically state[,]" including, "[w]hy continued out-of-home placement is necessary as opposed to returning the youth offender to the youth offender's home or promptly securing another placement." ORS 419C.626(3)(a).

Youth does not request *de novo* review and there is no indication that this is an "exceptional case" that would warrant *de novo* review. ORAP 5.40(8)(c) (stating that the court will exercise *de novo* review "only in exceptional cases"). We therefore review the juvenile court's legal conclusions for errors of law, but we are bound by the court's findings of fact so long as there is evidence in the record to support them. *State v. J. N. S.*, 258 Or App 310, 312, 308 P3d 1112 (2013) (citing *State v. S. T. S.*, 236 Or App 646, 655, 238 P3d 53 (2010)).

## II. BACKGROUND

In 2011, the juvenile court found youth to be within its jurisdiction based on an act that, if he were an adult, would constitute sexual abuse in the first degree, and committed youth to OYA custody. The court also specified that the placement preference for youth was in an OYA program "other than a youth correctional facility" and that youth shall complete sex offender treatment.

OYA then placed youth in a series of three out-of-home placements—one foster home and two residential facilities. Youth was removed from each placement based on allegations that he engaged in sexual conduct with other youths and did not complete his sex offender treatment.[1] After the final group-home placement failed, youth's OYA probation officer considered, but ultimately rejected, a plan for youth to live with his maternal grandmother. Youth was placed in an OYA correctional facility and learned that OYA was planning to place him at a residential treatment program in Portland. He requested an evidentiary hearing and court review of OYA's placement, pursuant to ORS 419C.626.

---

[1] The court's findings do not expressly address whether those encounters were entirely consensual or whether, as youth contended, he was sometimes the victim of other offenders. However, the court found that investigations into youth's allegations did not result in charges against any other youth offenders.

At the hearing, youth called several witnesses. Youth's grandmother testified that she lived on a 40-acre cattle ranch located four miles outside of Eagle Point, Oregon, and 16 miles outside of Medford; that she planned to retire from her job so that she could provide full time supervision; and that she would provide transportation for youth to mental health or sex offender treatment.

Marie Ann Wright, a certified sex offender therapist who runs the juvenile sex offender treatment program in Jackson County—the county in which Eagle Point is located—testified that she did not know the details of youth's sexual history involving peers, but that if youth were "out of control sexually, whether it's peer or young children, it would seem like he would pose a risk to be in the community." She also testified that, to her knowledge, she is the only certified sex offender treatment therapist for juveniles in Jackson County and that she could only treat youth if he were referred through the Jackson County Juvenile Department. She knew of one certified sex offender treatment therapist in neighboring Josephine County whom she thought might be running a group for youth offenders, but she did not know that with certainty.

Cory Woo, who is a program manager for the Jackson County Juvenile Department, testified that Wright's program is an "after-care" program, to which the department refers juveniles who are coming to the community after successfully completing an OYA sex offender program. In Woo's opinion, youth would be "not appropriate for community based treatment," if he had not completed sex offender treatment in his prior residential and foster-home settings and "[i]f [he was] still sexually acting out[.]"

At the conclusion of the hearing, the juvenile court took the case under advisement. It then issued a written ruling, in which it approved continuing the OYA placement. The order includes numerous findings of fact on which that determination is "based," including, as pertinent to the issue on appeal:

"3) Youth has not successfully completed sex offender treatment in the time that he has been in custody of OYA although he has apparently started such treatment;

"\* \* \* \* \*

"5)   Cory Woo from Juvenile Justice testified that a youth in [youth's] position would probably not be suitable for community supervision through the local probation department;

"6)   Ann Wright, a certified sex offender treatment provider testified that she would probably not be able to treat him in her group;

"\* \* \* \* \*

"9)   Youth's inability to be successful in more tightly controlled situations lessens his likelihood of success in a community setting.

"\* \* \* \* \*

"11)   Community safety is at risk if youth is placed in an at-home placement."

However, none of the court's findings expressly refer to youth's proposed placement with his grandmother or expressly describe continuing the OYA placement as "necessary."

## III.   DISCUSSION

On appeal, the parties dispute whether the juvenile court's factual findings satisfy ORS 419C.626(3)(a), which requires that the court's findings "specifically state \* \* \* [w]hy continued out-of-home placement is necessary as opposed to returning the youth" to "another placement[.]"[2] Youth argues that "some degree of inference" is required to connect the court's findings to a conclusion that continued out-of-home placement is necessary and that ORS 419C.626(3)(a) "demands more than inferences" as to "why" the out-of-home placement is "necessary as opposed to" securing another placement—in this case the proposed placement with youth's grandmother. The state responds that the court

---

[2] We are not called upon to address whether preservation rules would require a youth to object if a juvenile court makes oral findings that the youth believes are insufficient. In this case, the court only announced its findings in writing after the hearing. The state acknowledges, and we agree, that under those circumstances preservation requirements do not apply. *State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 182, 205 P3d 36 (2009) (preservation principles did not apply to mother's challenge to the court's failure to make statutorily required written findings, when "mother had no way of knowing that the court would enter a judgment that did not comply with the statute").

satisfied the statutory requirement by making detailed findings that "leave no room for doubt" as to "why" the court concluded that continued out-of-home placement was necessary. We agree with youth that ORS 419C.626(3)(a) requires express—not merely implied—findings as to why continuing the out-of-home placement is necessary as opposed to another placement. However, we agree with the state that, read in the context of the undisputed record that the findings address, the court's express findings state "why" continuing youth's out-of-home placement recommendation is "necessary."

A. *The Statutory Requirements*

Before explaining why the order in this case satisfies the requirement of ORS 419C.626(3)(a), we must explain what that statute requires. In general, in our review of a juvenile court's decision, we will infer that a trial court implicitly made certain necessary findings. *See J. N. S.*, 258 Or App at 312 ("If the court did not make findings on disputed issues of fact, and there is evidence to support more than one factual conclusion, we presume that the court decided the facts in a manner consistent with the court's ultimate conclusion."). In the context of a juvenile placement review hearing, however, ORS 419C.626(3) modifies that approach by requiring specific findings.

As described above, ORS 419C.626(3) requires:

"At the conclusion of the hearing, the court shall enter findings of fact if the decision is to continue the youth offender in an out-of-home placement in the legal custody of the youth authority or a private agency. *The findings shall specifically state*:

"(a) *Why continued out-of-home placement is necessary as opposed to* returning the youth offender to the youth offender's home or promptly securing another placement;"

(Emphases added.) The broader context of ORS 419C.626(3) includes two other findings that the juvenile court must "specifically state":

"(b) The expected timetable for return home; and

"(c) Whether the youth offender's reformation plan or case plan should be modified."

As with all matters of statutory construction, our "paramount goal" is to determine the legislature's intentions. *State v. Gaines,* 346 Or 160, 171, 206 P3d 1042 (2009). To accomplish that goal, we give "primary weight" to the statute's text and context. *Id.* at 171. Based on those considerations, we are persuaded that the "specifically state" requirement of ORS 419C.626(3) prohibits us from *inferring* that a juvenile court implicitly made the findings that it must "specifically state." *See* ORS 174.010 (in the construction of statutes, the court shall neither "insert what has been omitted, or * * * omit what has been inserted").

The legislature has not defined the term "specifically state," but those are words of common usage. We, thus, "assume that the legislature intended to give [those words] their 'plain, natural, and ordinary meaning,'" and we traditionally identify that ordinary meaning by looking to *Webster's Third New International Dictionary. State v. Clemente-Perez,* 357 Or 745, 756, 359 P3d 232 (2015) (quoting *PGE v. Bureau of Labor and Industries,* 317 Or 606, 611, 859 P2d 1143 (1993)). *Webster's* defines the verb "state" as "to express the particulars of" and "to put into words," and defines the adverb "specifically" as "1: in regard to the matter in question: with reference to a quality or condition that is specified or inherent" and "2: with exactness and precision: in a definite manner." *Webster's Third New Int'l Dictionary* 2187, 2228 (unabridged ed 2002). Thus, the ordinary meaning of a "specifically state[d]" finding suggests the opposite of a finding that is only implicit.

Our Supreme Court has cautioned, however, that dictionaries "do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used." *State v. Cloutier,* 351 Or 68, 96, 261 P3d 1234 (2011) (emphasis in original). That context, here, includes other statutes in which the legislature has established a similar requirement of specific findings.

Of particular significance to our construction of ORS 419C.626(3) is its nearly identical counterpart in the portion of the juvenile code that governs children who are wards of the state through dependency jurisdiction. Like

ORS 419C.626(3), ORS 419B.449 provides that, following a hearing to review the "condition and circumstances" of a child, if the child is in "substitute care," then "the findings of the court shall specifically state:"

> "Why continued care is necessary as opposed to returning the child or ward home or taking prompt action to secure another permanent placement[.]"

ORS 419B.449(1), (3)(a)(A). We have described that statute as "plainly requir[ing] the trial court to make particular findings of fact" and held that the court's failure to make all of the required findings was plain error. *State ex rel Dept. of Human Services v. J. N.*, 225 Or App 139, 143-44, 200 P3d 615 (2009). Our construction of that parallel statute is particularly significant because both it and ORS 419C.626 were enacted by the 1993 legislature, as part of legislation that split the previously unified juvenile code into two separate sections. Or Laws 1993, ch 33, §§ 132, 265.

In another case in which we construed a requirement that the "juvenile court shall make a specific, detailed, written finding of fact"—there, to support a determination to remand a juvenile to adult court—we explained that the requirement was "in effect a legislative insistence that the decision to remand be deliberate and explicitly justified." *State ex rel Juv. Dept. v. Heising,* 29 Or App 903, 907, 565 P2d 1105 (1977) (explaining requirement of *former* ORS 419.533(2), *repealed by* Or Laws 1993, ch 33, § 373); *see also Dept. of Human Services v. L. B.,* 246 Or App 169, 175, 265 P3d 42 (2011) (by including requirement in ORS 419B.476 that court include specific findings in the written order, "legislature has manifested its intent that a juvenile court expressly connect all of the dots along the way"). As the Supreme Court has emphasized, in the context of other specific-findings requirements, specific findings are important "to meaningful appellate review." *Peeples v. Lampert*, 345 Or 209, 225, 191 P3d 637 (2008). Thus, giving due consideration to the words and context of the statutory requirement, we are persuaded that ORS 419C.626(3)(a), similarly, represents the legislature's insistence that a decision to continue an out-of-home placement "be deliberate and explicitly justified."

However, our conclusion that the court's findings must explicitly state the reasons "[w]hy continued out-of-home placement is necessary as opposed to *** another placement" does not mean that the findings must mimic the statutory language. Although youth criticizes the court's failure to "use the required statutory language" that the out-of-home placement is "necessary," we do not share youth's understanding that ORS 419C.626(3)(a) requires the juvenile court to use the word "necessary." Youth's construction reads the statute as requiring the trial court to state *that* it is necessary to continue the out-of-home placement. But the text of the statute requires the court to specifically state the factual reasons *why* it is necessary to continue an out-of-home placement. Thus, youth's argument would require us to replace the term the legislature has used with a term the legislature has not used. We decline that invitation. *See* ORS 174.010.

B.  *The Order In This Case*

Youth contends that the court's findings are insufficient because they do not expressly refer to the possible placement with his grandmother, as opposed to a community placement generally, and the findings do not expressly reflect that the court considered whether the OYA "out-of-home" placement is "necessary as opposed to" the proposed placement with youth's grandmother. In the context of the evidence presented to the juvenile court, however, the findings are specific statements of "why" it is "necessary" to continue youth's out-of-home placement and show a "deliberate and explicitly justified" decision. *See Heising*, 29 Or App at 907.

We begin with the finding that youth acknowledges "is arguably the finding that most strongly supports" the court's placement decision—the court's finding that "[c]ommunity safety is at risk if youth is placed in an at-home placement." Given the context of the proposals at issue in the case and the significance that the Oregon juvenile justice system places on community safety, the court's finding regarding community safety fully explains why it is necessary to reject youth's proposed placement with his grandmother. First, there is no dispute that the proposed

placement with youth's grandmother would be an "at-home" placement within the meaning of the court's finding regarding "an at-home placement," broadly. Moreover, that placement was the only discussed alternative to continuing his OYA placement. Finally, the Oregon juvenile justice system "is founded on the principles of personal responsibility, accountability and reformation within the context of public safety and restitution to the victims and to the community." ORS 419C.001(1). Thus, if community safety is at risk if youth lives with his grandmother, then, on this record it is necessary to continue the OYA out-of-home placement.

Two other findings, understood in the context of the record, further explain why it is necessary to continue youth's out-of-home placement. First, the court credited Woo's testimony that youth "would probably not be suitable for community supervision through the local probation department[.]"[3] Woo, again, is a program manager for the Jackson County Juvenile Department, and the proposed placement with youth's grandmother would be in Jackson County. Thus, the court's reliance on Woo's testimony about "community supervision through the local probation department" addressed the proposed placement with youth's grandmother and explains why the court rejected that proposal.

Second, the court credited the testimony that youth probably could not receive sex offender treatment in Wright's group. In context, that finding explains the court's placement decision because the court has already ordered youth to complete sex offender treatment, the court expressly found that youth has not yet completed that treatment, and Wright testified that to her knowledge she is the only certified juvenile sex abuse treatment therapist in Jackson County. In that context, Wright's likely inability to treat youth in her sex offender group is another reason why it is necessary to reject the proposed placement with youth's grandmother in Jackson County. Thus, the juvenile court satisfied its obligation under ORS 419C.626(3)(a) to make findings that specifically state "why" it ordered youth to continue in the out-of-home placement and permit this court to determine,

---

[3] We understand the court's recitation of testimony on which it "based" the placement determination to mean that the court credited that testimony.

through meaningful appellate review, that the disposition was "necessary."[4]

Affirmed.

---

[4] We have previously noted that the term "necessary," depending on context, can mean either "'indispensible' *** or something less stringent, such as 'reasonably necessary' or 'useful' or 'convenient.'" *Friends of Yamhill County v. City of Newberg*, 240 Or App 738, 745, 247 P3d 767 (2011). The parties have not asked us to determine how the term "necessary" is used in ORS 419C.626(3)(a), and we need not undertake that task here, because the court's findings support a determination that the out-of-home placement was strictly "necessary."