Argued and submitted August 23, affirmed December 19, 2012, petition for
review denied April 11, 2013 (353 Or 445)

In the Matter of B. A. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

C. L.,
*Appellant.*

Yamhill County Circuit Court
00392260;
Petition Number J13066;
A150144

295 P3d 72

Megan L. Jacquot argued the cause and filed the brief for appellant.

Justice J. Rillera, Assistant Attorney General, argued the cause for respondent. With her on the brief were Mary H. Williams, Deputy Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

In this juvenile dependency case, mother appeals from a judgment after a permanency hearing changing the permanency plan from "another planned permanent living arrangement" (APPLA) to adoption pursuant to ORS 419B.476(5)(d) and rejecting her request to change the permanency plan from APPLA to reunification. The juvenile court found that, although mother had made some progress, it was not possible to return the child to mother in a reasonable time, and the court therefore rejected mother's request to change the permanency plan to reunification and concluded that the permanency plan should be changed from APPLA to adoption. The court ordered that a termination petition be filed within 90 days and set a preliminary hearing date. Mother contends that the court erred in changing the plan to adoption over her objection and in denying her motion to return to a plan for reunification and transition to return the child home, asserting that she has addressed and ameliorated the bases for jurisdiction stated in the petition. We affirm.

Mother asks that this court exercise its discretion under ORS 19.415(3)(b) to review *de novo*. This court will exercise its discretion to review *de novo* only in exceptional cases. ORAP 5.40(8)(c); *Dept. of Human Services v. G. D. W.*, 246 Or App 66, 71, 264 P3d 205 (2011), *rev allowed*, 351 Or 678 (2012). Factually, this is not an exceptional case.[1] Accordingly, we decline to exercise our discretion to review the facts *de novo*. We therefore are bound by the juvenile court's findings of historical fact as long as there is evidence to support them, and we review the court's rulings for legal error. *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010).

---

[1] Mother contends that this case is exceptional and that *de novo* review is therefore appropriate because the record shows that, in rejecting her request to change the permanency plan to reunification, the juvenile court mistakenly understood that mother was seeking to have reunification as the exclusive plan, with no concurrent plan, and that that misinterpretation adversely colored the juvenile court's rulings, including its factual findings. We reject mother's interpretation of the juvenile court's ruling. However, assuming, as mother contends, that the court misunderstood mother to be requesting reunification as the single plan, without a concurrent plan, we conclude, based on our reading of the record, that that misunderstanding did not adversely affect the juvenile court's assessment of the evidence or its legal conclusions.

We state the facts consistently with the juvenile court's express and implied findings and as supplemented by uncontroverted information in the record. *Dept. of Human Services v. T. C. A.*, 251 Or App 407, 410, 283 P3d 956 (2012). Mother has four children from three marriages: JO and JE, ages 22 and 21, were born during mother's marriage to Feltus. The relationship with Feltus was abusive, and mother separated from Feltus shortly after JE's birth. A, age 18, was born during mother's marriage to Kracht, which was also marked by domestic violence and ended when Kracht started using methamphetamine. Mother then entered into a relationship with and married Lister, and together they had B, now age 8. Like mother's previous partners, Lister was violent.[2] Only B is involved in this dependency proceeding.

The Department of Human Services has been involved with the family since 2004, when A, then age 10, told her counselor that Lister had sexually abused her. DHS determined that the allegations were "founded for sexual abuse." However, A and her siblings remained in the home on the condition that they have no contact with Lister. Mother voluntarily engaged in services, and DHS closed the case in 2006.

Mother's niece, S, also lived with the family. In February 2008, A and S reported to police that Lister was living in the home and had sexually abused them. Mother did not believe the girls, and DHS placed them in protective custody while the other children remained in the home.

Subsequently, law enforcement officers discovered that Lister was still in the home. At that time, DHS filed a dependency petition regarding B, who was then age four and one-half. At the first shelter-care hearing on September 14, 2009, the juvenile court granted DHS temporary legal custody of B. Mother told the court that she would not cooperate and that the child was out of state. Mother refused to disclose the child's location. When mother failed to appear at a second shelter-care hearing, the court issued a

---

[2] Lister did not appear at the permanency hearing and is not a party on appeal.

bench warrant. After a three-state search, law enforcement officials discovered mother and B in Yakima, Washington. DHS placed B in foster care, and the juvenile court took jurisdiction of B in November 2009. The jurisdictional judgment required that mother not have any contact with Lister.[3] The permanency plan at the time was reunification.

Mother and Lister resumed living together again in 2010. In July 2010, mother called police to report that Lister had assaulted her. At that time, Lister had a gun and was dealing drugs. In October 2010, following a September 2010 permanency hearing, the juvenile court changed the permanency plan for B from reunification to APPLA.

Psychological and neuropsychological evaluations of B reveal that she has serious mental health difficulties. Although her IQ is in the average range, B suffers from developmental delays, behavioral problems, an anxiety disorder, reactive attachment traits, a disruptive behavior disorder, and attention deficit hyperactivity disorder. Additionally, as a result of neglect, B has suffered emotionally and psychologically. Since coming within the court's jurisdiction, B has had six foster placements because of behavioral issues. In January 2011, she was placed with her current foster family, which is also an adoptive placement. Her foster mother testified that when B first came to live with them,

---

[3] The jurisdictional judgment stated the following bases for jurisdiction:

"C. [Mother] has failed to keep her husband away from her children such that he continued to sexually abuse [A] and then also abused [S] causing them to be removed from her care.

"D. [Mother] has failed to keep her husband away from [B] in that he was found at her house by Law Enforcement[.]

"E. [Mother] has continued her relationship with her husband as evidenced by her name being on the visiting list for him when he was recently incarcerated due to his probation being revoked.

"F. DHS was granted temporary legal custody of [B] at the first shelter hearing[.] At that hearing the mother made statements in court that she would not cooperate with DHS. She further refused to tell the court where the child was except that she had taken her out of state. The mother failed to appear for the second shelter hearing * * * and the court issued a bench warrant. [Mother] was subsequently located in Yakima, Washington with the child[.] Her behavior demonstrates that she lacks the capacity to adequately protect her child from harm."

A dispositional report attached to the judgment noted that mother could not control the child's behavior without yelling profanity and spanking her.

she had difficulty communicating and would point, grunt, or "meep" repeatedly when she wanted or needed things. She had trouble using a knife and fork and would eat with her hands. By the October 2011 hearing, B had improved greatly, but still exhibited symptoms, including arguing with adults, spitting, hitting, kicking, and throwing temper tantrums. She had nightmares, felt worthless, expressed excessive guilt and a fear of being stolen, and talked about killing herself.

Mother has had psychological evaluations, in 2008, 2010, and 2011. In 2010, Dr. Basham, a psychologist, diagnosed mother under Axis I with a major depressive disorder, recurrent and post-traumatic stress disorder, and panic disorder. Under Axis II, he diagnosed borderline intellectual functioning, and a personality disorder not otherwise specified with dependent and paranoid features. In 2011, mother participated in an updated psychological evaluation with Basham which resulted in similar diagnoses. Basham reported that, given mother's depression, which is only partially resolved by medication, her dependent personality traits and low self-esteem, and her continued uncertainty about Lister's abuse of A, there is a significant risk that mother will become involved again in an excessively dependent and unhealthy relationship.

As noted, the initial permanency plan for B was reunification. Then, in October 2010, following a permanency hearing, the juvenile court changed the permanency plan for B from reunification to APPLA.[4] In making that change, the court determined that DHS had made "reasonable efforts" to make it possible for B to return home and that mother had not made "sufficient progress" to make it possible for B to return home. ORS 419B.476(2)(a).[5] The court also determined that there was a compelling reason, documented

_____

[4] APPLA is "any permanency plan other than reunification, adoption, guardianship, or permanent placement with a fit and willing relative." OAR 413-070-0520. It is the "least preferred permanency plan for a child." OAR 413-070-0532.

[5] ORS 419B.476(2)(a) provides that, if the case plan at the time of the hearing is reunification, the court must

"determine whether the Department of Human Services has made reasonable efforts * * * to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to

by DHS, why it would not be in B's best interest to return home. ORS 419B.476(5)(f).

The juvenile court held another permanency hearing regarding B on June 10, 2011, which was continued to September 27-28, 2011, and October 14, 2011. Having identified a prospective adoptive family for B, DHS moved to change the permanency plan for B from APPLA to adoption. Mother, in turn, sought to change the plan back to reunification. At the hearing, the juvenile court considered testimony about mother's mental and emotional health, the work that mother had done to address her mental health problems, mother's home life and desire and ability to care for B, and her successful efforts to remove Lister from her life. The court also heard testimony about B's mental and emotional health, B's positive home life and improvements with her foster parents, who are the prospective adoptive parents, as well as B's desire to return to mother. Finally, the juvenile court heard evidence of circumstances that had not been a part of the original petition or judgment for jurisdiction over B—mother's alleged physical abuse of both A and B. Considering all of the evidence, the juvenile court rejected mother's request to change the plan from APPLA to reunification and ordered the permanency plan changed to adoption.

In her first assignment, mother asserts that the juvenile court erred in denying mother's motion to change the plan from APPLA to reunification. She contends in her second assignment that the court erred in determining, on the basis of extrajurisdictional findings, that the child could not be safely returned to mother within a reasonable time and that the permanency plan should be changed from APPLA to adoption. In her third assignment, mother contends that, where the record shows that mother has successfully ameliorated the bases for jurisdiction, the trial court erred in finding that B could not be returned to mother within a reasonable time.

Because it underlies each of the assignments, we consider first mother's contention in her second assignment

safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns."

that, in determining that B could not be safely returned to mother within a reasonable time and in changing the permanency plan from APPLA to adoption, the juvenile court could not consider evidence of mother's physical abuse of A and B, presented for the first time at the permanency hearing on June 10, 2011, because that evidence had not been a basis for jurisdiction. We begin with a summary of the pertinent statutes. At a permanency hearing, when, as here, the case plan at the time of the hearing is other than reunification, the juvenile court's obligation is to

> "determine whether the department has made reasonable efforts to place the ward in a timely manner in accordance with the plan * * * and to complete the steps necessary to finalize the permanent placement."

ORS 419B.476(2)(b). But when the case plan at the time of the hearing is to reunify the family, the juvenile court must

> "determine whether [DHS] has made reasonable efforts * * * to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns."

ORS 419B.476(2)(a).

Within 20 days of a permanency hearing, the court is required to enter an order, and the order must include specific findings. ORS 419B.476(5). When, as here, the court determines that the permanency plan should be adoption, the court is required by ORS 419B.476(5)(d) to determine whether any of the circumstances set forth in ORS 419B.498(2)(a) to (c) is applicable. ORS 419B.498, in turn, sets forth the requirements for the simultaneous filing of a petition for termination of parental rights and moving forward with adoption. ORS 419B.498(1) describes the circumstances under which a petition to terminate parental rights *must* be filed, and expressly requires (subject to the exception discussed below) the filing of a termination petition and the approval of adoption when, as here, the child has been in substitute care under the responsibility of DHS for 15 of the most recent 22 months.

ORS 419B.498(2) sets forth the *exceptions* to the filing of a termination petition:

"(a)   The child or ward is being cared for by a relative and that placement is intended to be permanent;

"(b)   There is a compelling reason, which is documented in the case plan, for determining that filing [a petition for termination of parental rights] would not be in the best interests of the child or ward. Such compelling reasons include, but are not limited to:

"(A)   The parent is successfully participating in services that will make it possible for the child or ward to safely return home within a reasonable time as provided in ORS 419B.476(5)(c);

"(B)   Another permanent placement is better suited to meet the health and safety needs of the child or ward * * *;

"(C)   The court or local citizen review board in a prior hearing or review determined that while the case plan was to reunify the family the department did not make reasonable efforts * * * to make it possible for the child or ward to safely return home; or

"(c)   The department has not provided to the family of the child or ward, consistent with the time period in the case plan, such services as the department deems necessary for the child or ward to safely return home, if reasonable efforts to make it possible for the child or ward to safely return home are required to be made with respect to the child or ward."

As noted, in changing the permanency plan to adoption, the juvenile court is required to determine whether any of the circumstances described in ORS 419B.498(2) would preclude the filing of a petition to terminate parental rights. The court is also required to determine when the ward will be placed for adoption and when a petition for termination will be filed. ORS 419B.476(5)(b)(B).

Thus, in this permanency proceeding, where the permanency plan at the time of the hearing was APPLA, the court had previously determined that there was a compelling reason, documented by DHS, why reunification with mother was not in the best interests of B. ORS 419B.476(5)(f). The goal of DHS was no longer reunification; the court's inquiry at

the permanency hearing was not whether mother had made sufficient progress or whether DHS had made reasonable efforts toward reunification. *See T. C. A.*, 251 Or App at 413-14 (when permanency plan at time of hearing is not reunification, "reasonable efforts" and "sufficient progress" standards in ORS 419B.476(2)(a) do not apply). When the permanency plan is APPLA, the question is whether DHS "has made reasonable efforts to place the ward in a timely manner in accordance with the plan[.]" ORS 419B.476(2)(b). Reasonable efforts in accordance with an APPLA plan are DHS's reasonable efforts to find a permanent foster placement for the child. Whether mother had previously abused A or B did not have direct bearing on that inquiry.

However, because in this case DHS sought to change the permanency plan from APPLA to adoption and mother sought reunification, mother's past physical abuse of the children was relevant in the context of the inquiry that the court must make as to whether, as mother asserts, it was possible for B to return home within a reasonable time. ORS 419B.498(2)(b)(A). Mother contends that in making that determination, the evidence of mother's alleged physical abuse of A and B could not be considered, because it was not one of the bases on which the juvenile court took jurisdiction. She cites several recent opinions of this court in support of her position. *Dept. of Human Services v. N. T.*, 247 Or App 706, 715-16, 271 P3d 143 (2012) ("[I]f a court, in [changing a permanency plan from reunification to adoption] relies on facts other than those explicitly stated or fairly implied by the jurisdictional judgment, and doing so affects the substantial rights of a parent, the determination cannot be sustained."); *Dept. of Human Services v. N. M. S.*, 246 Or App 284, 266 P3d 107 (2011) (holding that, when permanency plan is reunification, in making determination under ORS 419B.476(2)(a) regarding DHS's reasonable efforts and mother's sufficient progress toward reunification, court errs in relying on facts extrinsic to those upon which jurisdiction was established); *Dept. of Human Services v. G. E.*, 243 Or App 471, 260 P3d 516, *adh'd to as modified on recons*, 246 Or App 136, 265 P3d 53 (2011) (court may not continue dependency jurisdiction over a child based on facts not alleged in or inferable from jurisdictional petition,

where reliance on those facts affects substantial rights of the parent); *State ex rel Juv. Dept. v. K. D.*, 228 Or App 506, 515, 209 P3d 810 (2009) (interpreting ORS 419B.476(2)(a), where case plan at time of hearing is reunification, both DHS's efforts and a parent's progress are evaluated by reference to facts that formed the bases for juvenile court jurisdiction). Mother asserts that, because the evidence of physical abuse of A and B was not a basis for jurisdiction, it is fundamentally unfair for the court to continue jurisdiction on that ground or to take the alleged physical abuse of A and B into consideration in determining if it will be possible for B to return home within a reasonable time under ORS 419B.498(2)(b)(A).

We disagree with mother's assertion that the evidence could not be considered by the juvenile court in the context of that determination. As the state correctly points out, in each case on which mother relies, the permanency plan at the time of hearing was reunification. As we have explained, ORS 419B.476(2)(a) requires that when the permanency plan at the time of the hearing is reunification, in order to change to a permanency plan other than reunification, the court must find that DHS has made reasonable efforts to reunify the family and that the parent has not made sufficient progress to make reunification possible. It is in the context of the court's determination of the agency's "reasonable efforts" and the parent's "sufficient progress" under ORS 419B.476(2)(a) that the assessment must be made in relation to the bases for jurisdiction. *See, e.g., N. M. S.*, 246 Or App at 294 (holding that parental progress toward reunification is measured in terms of the parent's efforts toward remedying the barrier to reunification identified in the dependency petition and the applicable case plan.) And as we explained in *G. E.*, the underlying rationale for that conclusion is that, when it is the parent's obligation to do certain things to prevent the state from assuming or continuing jurisdiction, ORS 419B.857[6] requires that the parent have notice from the

---

[6] ORS 419B.857 provides:

"(1) All petitions, answers, motions and other papers must be liberally construed with a view of substantial justice between the parties.

"(2) In every stage of an action, the court shall disregard an error or defect in the petition, answer, motion, other paper or proceeding that does not affect the substantial rights of the adverse party."

petition or jurisdictional judgment as to what he or she must do. 243 Or App at 481.

Where, however, as here, the permanency plan at the time of the hearing is not reunification, the inquiry is quite different. In previously establishing a permanency plan of APPLA, the juvenile court had already determined that there was a compelling reason, documented by DHS, why reunification was not in B's best interests. ORS 419B.476(5)(f). In that circumstance, where the goal is no longer reunification, the juvenile court's inquiry is not whether the parent has made sufficient progress or whether DHS has made reasonable efforts toward reunification. Rather the juvenile court's inquiry is whether DHS "has made reasonable efforts to place the ward in a timely manner in accordance with the plan[.]" ORS 419B.476(2)(b). A parent's "sufficient progress" is simply not a part of that inquiry. Nor is the parent's sufficient progress a component of the court's determination under ORS 419B.498(2)(b). The focus of that provision, rather, is child-centered, and requires a determination whether it is in the child's best interests not to file a petition for termination because the child can be returned home within a reasonable time.

As we explained in *G. E.*, 243 Or App at 481, in the context of a case involving a determination of the parent's sufficient progress, the parent must have notice of what must be done in order to reunify the family. In such circumstances, the court's consideration of evidence extrinsic to the jurisdictional judgment would impermissibily affect a substantial right of the parent. But, in this context, where the permanency plan at the time of hearing is not reunification, the consideration of evidence extrinsic to the jurisdictional judgment for purposes of the determinations under ORS 419B.498(2) does not affect a substantial right of the parent, as long as there are procedural safeguards that allow the parent a reasonable opportunity to respond to the evidence offered at the hearing. There is no contention here that those safeguards were not present.[7] We

---

[7] Both B and A testified at the initial hearing on June 10, 2011. B testified that she wanted to be with her mother because "she hasn't hit me in a long time." A testified that mother was a "very violent person. She had a very bad temper" and that mother beat her on a daily basis. She testified that B asked her "why mommy

therefore conclude that it was not error for the juvenile court to consider evidence, offered for the first time at the permanency hearing, of mother's past physical abuse of A and B in considering whether the permanency plan should be changed to adoption or whether it was possible for B to return home within a reasonable time. We move on to consideration of mother's remaining assignments of error in light of that conclusion.

In her first assignment, mother asserts that the juvenile court erred in denying mother's request to change the plan from APPLA to reunification. In her third assignment, mother contends that the trial court erred in finding that B could not be returned to mother within a reasonable time, because the record shows that mother has successfully ameliorated the bases for jurisdiction. We conclude that the juvenile court's determinations rejecting mother's contentions are supported by evidence in the record. *C. Z.*, 236 Or App at 442. We accordingly affirm the juvenile court's rulings.

Affirmed.

---

hit me." Mother did not object to their statements and had the opportunity to cross-examine them. Mother did not request that the hearing be continued so that she could rebut B and A's statements. Mother had a reasonable opportunity to respond to B and A's allegations.

The permanency hearing was continued to September 2011 and again to October 2011. We note that before the final hearing, Basham wrote a letter to clarify his testimony. Basham was asked to assume that the allegations by B and A of physical abuse by mother were false. Based on that assumption, Basham was asked to comment on mother's readiness to resume care of her children. Basham's conclusions did not change. Basham wrote that it was possible that mother could make progress but any progress "is typically quite slow and occurs over a period of years, not months." Mother did not cross-examine Basham or submit rebuttal evidence.