Argued and submitted November 2, reversed and remanded December 27, 2012

In the Matter of C. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

P. H.,
nka P. L.,
*Respondent,*

*v.*

T. H.,
*Appellant.*

Douglas County Circuit Court
1000160;
Petition Number 10JU112;
A151698 (Control)

In the Matter of L. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

P. H.,
nka P. L.,
*Respondent,*

*v.*

T. H.,
*Appellant.*

Douglas County Circuit Court
1000161;
Petition Number 10JU112;
A151699

294 P3d 531

Holly Telerant, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent Department of Human Services. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

James A. Palmer waived appearance for respondent P. H.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

### SCHUMAN, P. J.

Father appeals from a judgment of the juvenile court continuing the permanency plan of APPLA, or "another planned permanent living arrangement,"[1] for his two children. He argues that we must reverse and remand the judgment because the juvenile court failed to make certain statutorily-mandated written findings. The Department of Human Services (DHS) responds that, at the permanency hearing, father failed to object to the lack of findings, thereby waiving his right to assign error on appeal to that lack, and that, in any event, omitting the findings was harmless error. As explained below, we conclude that the usual requirement that a party preserve a claim of error at trial in order to raise it on appeal does not apply in this case, and that, on the merits, the court's omission of findings was not harmless error. We therefore reverse and remand.

In 2010, the juvenile court took jurisdiction over father's two children on the following grounds:

"Father reported medical issues relating to his son which he feared were the result of sexual abuse. Father did not seek professional evaluation.

"Father has demonstrated poor impulse control in his behavior with children resulting in arrests for sexual crimes for children, resulting in a safety threat to his children.

"Father began a sexual relationship with mother when she was a minor.

"Father has mental health issues which impact his ability to make safe parenting decisions."

In 2012, father filed a *pro se* motion to dismiss jurisdiction. At the hearing on that motion, father, now represented by counsel, decided to withdraw the motion, at which point the court noted that an annual permanency hearing was scheduled to occur within a few months and, with the consent

---

[1] APPLA is "a permanency plan for a stable secure living arrangement for a child or young adult that includes building relationships with significant people in the child's life that may continue after substitute care." OAR 413-070-0524(1). The judgment in this case designated the plan to be APPLA and, more specifically, "PFC," or "permanent foster care."

of the parties, decided to conduct that hearing on the spot. A perfunctory permanency hearing occurred. Afterward, the court entered a judgment continuing the permanency plan of APPLA for both children. The judgment was a nine-page check-the-boxes and fill-in-the-blanks form.

Father's argument on appeal is that the document failed to meet the requirements for permanency judgments specified in ORS 419B.476(5):

"The court shall enter an order within 20 days after the permanency hearing. *** [T]he order shall include:

"(a) *** [A] brief description of the efforts the department has made with regard to the case plan in effect at the time of the permanency hearing;

"* * * * *

"(f) If the court determines that the permanency plan for the ward should be a planned permanent living arrangement, the court's determination of a compelling reason, that must be documented by the department, why it would not be in the best interests of the ward to be returned home, placed for adoption, placed with a legal guardian or placed with a fit and willing relative."

Within the form judgment, the court checked a box indicating that "[t]he case plan in effect at the time of the hearing is: *** [a] planned permanent living arrangement (APPLA), which is: PFC [permanent foster care]." The court also checked a box indicating that "DHS has made reasonable efforts to place the child in a timely manner (including, if applicable, in an interstate placement) in accordance with the plan and to finalize the child's permanent placement." Immediately following that determination, the form includes a line stating: "The DHS efforts include the following: _____." The court left that line blank.

On a subsequent page of the form is a check-box with the heading, "Planned permanent living arrangement (APPLA)." Under that heading are a series of check-boxes where the court would have been able to indicate

"[1] There are compelling reasons, which DHS has documented, why it would not be in the child's best interests to be returned home, placed for adoption, placed with a legal guardian, or placed in the custody of a fit and willing relative * * *;

"[2] Placement of the child with a parent is not appropriate, because * * *;

"[3] Adoption is not appropriate, because * * *;

"[4] Guardianship or a relative placement is not appropriate, because * * *;

"[5] The child has needs that require a therapeutic or other specialized placement * * *;

"[6] Additional related findings[.]"

The court left all of those boxes unchecked. To the extent that the court attempted to meet the statutory requirements, it did so by checking a box by the statement, "The Court considered the following evidence in making the Findings and Orders in this Judgment: The following information/materials of which the Court has taken judicial notice[.]" In a space after the statement, the court wrote, "Court report from Agency filed 5/10/12." No report is attached to the judgment. Father argues that the judgment fails to meet the statutory requirements.

DHS, in response, acknowledges that the court did not make the requisite findings, and we agree. In *State ex rel DHS v. M. A.*, 227 Or App 172, 183, 205 P3d 36 (2009), under circumstances similar to those in the present case, we held:

"The fact that the judgment refers to what the court 'heard from the parties' and states that the court took judicial notice of the caseworker's report, establishes, at most, the information on which the court relied in making its decision. It does not, without more, reflect the court's reasoning or demonstrate the basis for the court's ultimate decision, much less set forth, as required in this case, a 'compelling reason' why it is in the children's best interest to move to a permanency plan of long-term foster care. Thus, it is inadequate to meet the requirements of the statute."

(Footnote omitted.) It is true that, in *Dept. of Human Services v. H. R.*, 241 Or App 370, 374-75, 250 P3d 427 (2011), we subsequently held that the judgment adequately met the requirement that it include a list of services by expressly incorporating into its written judgment an agency report. We noted that the court

> "adopted DHS's court report dated May 26, 2010, 'as the Court's written findings' ***. The report contains a request for a finding of reasonable efforts, followed by a summary description of those efforts. On this record, there is no ambiguity about which report the court adopted as its written findings, nor is the report so lengthy or unclear as to preclude its use as a 'brief description.' Here, the juvenile court's adoption of DHS's court report as its written findings concerning reasonable efforts was sufficient to comply with the requirement of ORS 419B.476(5)(a) that the judgment include 'a brief description of the efforts the department has made with regard to the case plan in effect at the time of the permanency hearing.'"

*Id.* at 375. The judgment in the present case falls far short of the judgment in *H. R.* Here, as in *M. A.*, the court did not incorporate the agency report; it merely noted that it had taken judicial notice of it. Nor can we discern from the judgment the court's reasoning or the basis of its ultimate decision.

DHS advances two arguments. The first is that, because father failed to preserve his claim of error at trial and he does not argue that the error is "plain," we therefore cannot review it on appeal. ORAP 5.45. DHS recognizes that, in *M. A.*, 227 Or at 181-82, we held that, because ORS 419B.476(5) requires only that the juvenile court provide the specified findings in a written judgment within 20 days of the end of the permanency hearing, parties ordinarily do not have the opportunity to lodge objections at the hearing itself. DHS appears to argue, however, that, because this case involves the *continuation* of a permanency plan, as opposed to a *change* in a permanency plan as was the case in *M. A.*, preservation is required. We are unable to perceive why the difference that DHS identifies should have any bearing on a party's ability to lodge an objection to the lack of findings at the hearing itself. For that reason, we

hold that where, as here, the first opportunity to know that the juvenile court's failure to include the required written findings does not occur until after the permanency hearing, a party has no obligation at the hearing to preserve a claim of error by objecting to that failure. Nor, of course, does a party have an obligation to file a motion for reconsideration. *See Carter v. U. S. National Bank*, 304 Or 538, 546, 747 P2d 980 (1987) ("Lawyers filing motions to reconsider * * * might better denominate such a motion as a 'motion asking for trouble[.]'" (Peterson, C. J., concurring)).

DHS's second argument is that the omission of findings, although error, was harmless. Again, DHS recognizes that *M. A.* imposes something of an impediment to that argument. In that case, after holding that the omission of findings was error, we explained:

> "By requiring that the court make such findings, the legislature has expressed its intent that the trial court carefully evaluate DHS's decision to change a permanency plan for a child in order to ensure that the decision is one that is most likely to lead to a positive outcome for the child."

*M. A.*, 227 Or App at 183; *see also Dept. of Human Services v. L. B.*, 246 Or App 169, 175, 265 P3d 42 (2011) (court must "expressly connect all of the dots along the way to a change in the permanency plan"). DHS contends, however, that the present case is distinguishable, because, again, it does not involve the *change* of a permanency plan, but the continuation of one that the court has previously approved and determined is in the best interest of the child.

We disagree. The consequence of a decision to maintain a permanency plan implicates the same calculation of what may lead to a positive outcome for the child as a decision to impose a plan in the first instance. In either case, the court must decide between competing options: maintain the status quo or change it. The need to "carefully evaluate" the situation is the same.[2]

---

[2] Father does not advance the argument that, where the legislature has mandated findings ("[T]he order shall include * * *," ORS 419B.476(5)), it has, in effect, decided that omitting findings is harm, and we therefore lack authority to negate that policy choice. We therefore do not address that argument.

The court erred in not including the findings required under ORS 419B.476(5). That error did not have to be preserved under the circumstances of this case, and it was not harmless. We therefore reverse and remand.

Reversed and remanded.