83

Submitted March 13, permanency judgment as to A reversed and remanded; otherwise affirmed August 14, 2013

In the Matter of V. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. H.
and B. R.,
*Appellants.*

Josephine County Circuit Court
110119J;
Petition Number 110119J01;
A152448 (Control)

In the Matter of A. H.,
aka A. R., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. H.
and B. R.,
*Appellants.*

Josephine County Circuit Court
100089J;
Petition Number 100089J01;
A152449

308 P3d 311

Peter Gartlan, Chief Defender, and Holly Telerant, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant M. H.

Christa Obold-Eshleman filed the brief for appellant B. R.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Laura S. Anderson, Senior Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Mother and father appeal juvenile court judgments in which the court continued the permanency plan of adoption as to one child, A, and continued the permanency plan of reunification as to another child, V. On appeal, mother and father assert that, in continuing the permanency plan of adoption for A, the juvenile court erred by failing to include on the face of the judgment its determination whether there was any reason under ORS 419B.498(2) to defer the filing of a petition to terminate mother and father's parental rights, as required by ORS 419B.476(5)(d).[1] We agree, and we also conclude that the error was not harmless. Consequently, we reverse the permanency judgment regarding A. As to the permanency judgment for V, mother and father argue that the juvenile court erred in determining that the Department of Human Services (DHS) had made reasonable efforts to make it possible for V to safely return home. We conclude that the evidence supports the juvenile court's determination that DHS made reasonable efforts to reunify V with parents, and we therefore affirm the permanency judgment regarding V.

The parties do not ask for *de novo* review, and this is not an exceptional case that warrants exercise of our discretion to apply that standard. *See* ORS 19.415(3)(b) (providing for discretionary *de novo* review of certain equitable actions); ORAP 5.40(8)(c) (the court will exercise discretion to try the cause anew on the record only in exceptional cases). Accordingly, we review the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's determination and assess whether, when so viewed, the record was legally sufficient to permit that outcome. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

As noted, two children are affected by this appeal: A, who was two years old at the time of the permanency hearing; and V, who was one. Both children have been in DHS

---

[1] Mother and father are represented by different attorneys and have filed separate briefs, but have joined in each others' arguments.

custody since shortly after birth.[2] DHS became involved with the family in 2010 because, among other things, mother's parental rights as to two older children that she had with a different father had been terminated, and father is a convicted sex offender. A was removed from parents' custody a few days after her birth in May 2010, and the juvenile court entered a jurisdictional judgment granting DHS custody of A in September 2010. Parents stopped attending supervised visits with A in April 2011 when a DHS worker noticed that mother was pregnant. In May 2011, A was placed in substitute care with her maternal great aunt, who is also the placement for A's older half-brother.

V was born on June 6, 2011, at a motel in Grants Pass while parents were driving to California, at least in part to prevent DHS from taking custody of V. A few days after V's birth, she was removed from parents' custody in California and placed in DHS custody in Oregon. Parents returned to Oregon a few days later and resumed visits with A and began visits with V at the DHS office. In July 2011, the juvenile court changed A's permanency plan from reunification to adoption.

The juvenile court held a jurisdictional hearing regarding DHS's jurisdiction over V in November 2011, and April and May 2012, and it entered a judgment declaring V to be a ward of the court in July 2012. This court affirmed that judgment in *Dept. of Human Services v. M. H.*, 256 Or App 306, 300 P3d 1262 (2013).

In July 2012, the juvenile court held a dispositional hearing for V, at which time DHS asked to be relieved of its duty to make efforts to reunify V with parents, based on parents' past failure to engage in services and their attempt to leave Oregon without regard for the risk that it would create for V or the effect that it would have on A. The court denied that request and ordered DHS to provide services to parents. The court also entered a dispositional judgment placing V in the legal and physical custody of DHS. Also in July 2012, DHS moved V into relative foster care in the

---

[2] A more detailed recitation of parents' prior history with DHS is contained in *Dept. of Human Services v. M. H.*, 256 Or App 306, 300 P3d 1262 (2013). That case concerned parents' appeal of the jurisdictional judgment regarding V.

Keizer home of her maternal great aunt, the same home as A and her older half-brother.

The juvenile court held the combined permanency hearing at issue in this appeal one month later, on August 9 and 10, 2012. Shortly thereafter, the juvenile court issued a letter opinion containing its determinations and factual findings as to both children. The juvenile court then entered the permanency judgment for A, continuing the plan of adoption, and a separate permanency judgment for V continuing the plan of reunification and the concurrent plan of adoption.

On appeal, parents advance three assignments of error as to the permanency judgment for A: (1) the juvenile court failed to comply with the requirement in ORS 419B.476(5)(d) to include in the judgment its determination of whether there were any compelling reasons under ORS 419B.498(2) to defer the filing of petitions to terminate parental rights; (2) the court abused its discretion in ruling that the permanency plan of adoption was in A's best interest; and (3) the court erred in concluding that the permanency plan for A should continue to be adoption.

With respect to the permanency judgment for V, parents assign error to the juvenile court's conclusion that DHS made reasonable efforts to reunify the family.

We begin with issues concerning A. In parents' first assignment regarding her, they contend that the permanency judgment continuing a plan of adoption for A must be reversed because the order on which it is based fails to include a "no compelling reason" determination as required by ORS 419B.476(5)(d) and ORS 419B.498(2)(b). In particular, parents argue that the order was required to include a determination that parents were *not* participating in services that would enable reunification within a reasonable time. ORS 419B.498(2)(b)(A).

That argument derives from the interrelationship between ORS 419B.476 and ORS 419B.498. ORS 419B.476(2)(b) provides that where, as here, the case plan at the time of the permanency hearing is adoption, the court must determine whether the department has made reasonable efforts "to place the ward in a timely manner in accordance with

the plan." Notably, the subparagraph does *not* require any determination regarding the parent's progress in services and whether reunification is possible within a reasonable time. The court must enter an order within 20 days of the hearing, and that order, if the permanency plan is continued as, or changed to, adoption, *shall* include "the court's determination of whether one of the circumstances in ORS 419B.498(2) is applicable." ORS 419B.476(5)(d). One of the "circumstances" in ORS 419B.498(2) is whether "there is a compelling reason" not to file a petition to terminate parental rights, ORS 419B.498(2)(b), and one of the "compelling reasons" is that the parent is "successfully participating in services that will make it possible for the child or ward to safely return home *within a reasonable time*." ORS 419B.498(2)(b)(A) (emphasis added).

There is no dispute that the juvenile court's permanency order and judgment continuing a permanency plan of adoption for A did not include the "no compelling reason" determination required by ORS 419B.476(5)(d) and ORS 419B.498(2)(b). DHS draws our attention to the fact that the error is unpreserved because parents did not object to the judgment, but concedes that the failure to include the determination is error. However, DHS argues that we should not exercise our discretion to review it.

We have held that "where * * * the first opportunity to know that the juvenile court's failure to include the required written findings does not occur until after the permanency hearing, a party has no obligation at the hearing to preserve a claim of error by objecting to that failure." *Dept. of Human Services v. T. H.*, 254 Or App 394, 400, 294 P3d 531 (2012); *see also State ex rel DHS v. M. A.*, 227 Or App 172, 181-82, 205 P3d 36 (2009) (holding that until the juvenile court's permanency order issued, the parent had no way of knowing that the court would enter a judgment that did not comply with the permanency statute). In this case, parents could not have known that the judgment was deficient because it did not include the determination required by ORS 419B.476(5)(d) until the judgment was issued. Thus, the error is not one that could have been preserved. *M. A.*, 227 Or App at 181.

The question remains whether the error is reversible. We have held in a number of opinions that a failure to make determinations required by ORS 419B.476(5) is reversible error. *See, e.g., M. A.*, 227 Or App at 181-82 (juvenile court's failure to make the determinations required by ORS 419B.476(5)(a) and (f) is reversible error); *see also T. H.*, 254 Or App 394 (same); *Dept. of Human Services v. H. P.*, 252 Or App 346, 287 P3d 1175 (2012) (failure to sufficiently incorporate and attach findings to satisfy ORS 419B.476(5)(a) was reversible error); *Dept. of Human Services v. S. A.*, 250 Or App 720, 281 P3d 655 (2012) (holding that, in a judgment continuing a guardianship after a permanency hearing, the juvenile court's failure to include any of the permanency determinations required by ORS 419B.476(5) was reversible error); *Dept. of Human Services v. W. F.*, 240 Or App 443, 247 P3d 329 (2011) (failure to make findings required by ORS 419B.476(2)(b) and (c) was reversible error).

As noted, the department concedes that the juvenile court's failure to include a "no compelling reasons" finding in its permanency order is error, but contends that the error is harmless. That is so, the department reasons, because the required findings are relevant only to *when* the adoption and termination proceedings should occur, and here, they have already occurred. Assuming the correctness of that interpretation, it does not render the defective permanency judgment harmless. Adoption and termination proceedings cannot occur until there is a necessary predicate permanency judgment. Had the juvenile court rendered such a judgment, complete with findings relevant to the timing of adoption and termination proceedings, those proceedings might have been deferred, giving parents more of an opportunity to demonstrate their progress. That demonstration, in turn, could have had an effect on the outcome of the adoption and termination proceedings. The error, we conclude, was not harmless.

Parents further contend with respect to A that the juvenile court erred and abused its discretion in continuing the permanency plan of adoption, because the record shows the existence of compelling reasons under ORS 419B.498(2)(b) for deferring the permanency plan of adoption, as parents are now willing to begin participating in services so that A

can be reunited with them in a reasonable time. *See* ORS 419B.498(2)(b)(A). Relatedly, they also argue that, for the same reason, the court erred in concluding that adoption was in A's best interest. We need not address those assignments of error, however, in light of our conclusion that the permanency judgment itself was defective.

We turn to parents' contention that, in continuing a permanency plan of reunification for V, the court erred by finding that DHS had made reasonable efforts to reunify the family. At a permanency hearing, where the case plan at the time of the hearing is to reunify the family, the court is required to:

"determine whether [DHS] has made reasonable efforts * * * to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns."

ORS 419B.476(2)(a).

Here, the juvenile court determined that DHS had made reasonable efforts to reunify V with parents during the relevant period under review, between June 9, 2012, and August 10, 2012. In its attached findings, the court found that DHS had assisted mother and father to (1) determine Indian Child Welfare Act eligibility; (2) engage in services; (3) fully participate in the case plan; (4) identify relatives as possible placement resources for V; (5) maintain a connection with their daughter; and (6) attend visitation, services, meetings, and court hearings related to the case. But, for various reasons, until the most recent permanency hearing, parents had chosen not to participate in those services with respect to either A or V. The court found that parents

"were offered services upon the placement of [V], as well as with other cases regarding other children. To date, neither [mother] nor [father] has engaged in services offered. They do not currently state a willingness to engage in these services and the caseworker has called to schedule them."

The juvenile court found that, to allow parents to maintain connection with V, "DHS has offered twice-weekly visitation

with [V], which both have attended regularly. Since [V's] change in placement, [mother] and [father] are offered two hour visits, two times a month." Further, the court found that, after V had been moved from Grants Pass to Keizer "DHS has provided both [mother] and [father] with a monthly bus pass so they can attend all case related matters. In addition, transportation and lodging are provided to the parents each time they have a scheduled visitation with [V]."

Parents dispute the juvenile court's determination that DHS's efforts were reasonable, complaining that DHS did not timely provide a referral to father for a required psychosexual evaluation or parenting classes. Additionally, parents contend that, by moving V to Keizer and by reducing parents' visitation schedule from twice weekly to twice per month, DHS is not furthering parents' reunification with V. Additionally, parents expressed frustration that, although DHS provided bus transportation for parents from their home in Grants Pass to Salem, as well as a motel room for the twice monthly visits with V, DHS did not consistently provide transportation services from the Salem bus station to the DHS office for visits with V and back to the motel, requiring parents to walk up to six miles each way to attend visits.

Despite parents' understandable frustration with the reduced number of visits and the inconvenience of having to travel to Salem and walk to the DHS office for their visits with V, the juvenile court explicitly found that it was reasonable for DHS to move V to the physical care and custody of her maternal great aunt in Keizer, who also had custody of A and who had been identified as an adoptive placement for A. We have reviewed the record and conclude that, considering the record as a whole, the juvenile court's determination that DHS made reasonable efforts with respect to V is supported by the evidence in the record, and that the juvenile court did not err.

Permanency judgment as to A reversed and remanded; otherwise affirmed.