Argued and submitted June 10, affirmed October 15, 2014

In the Matter of A. H., aka A. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Appellant,*

*and*

A. H.,
aka A. R.,
*Appellant,*

*v.*

M. H.
and B. R., aka B. J. B.,
*Respondents.*

Josephine County Circuit Court
100089J;
Petition Numbers 100089J02, 100089J03;
A156135

337 P3d 976

Inge D. Wells, Senior Assistant Attorney General, argued the cause for appellant Department of Human Services. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Holly Telerant, Deputy Public Defender, argued the cause for respondent M. H. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

George W. Kelly filed the brief for appellant A. H.

Christina Obold-Eshleman filed the brief for respondent B. R.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

In this dependency case, the Department of Human Services (DHS) and child, A, appeal a judgment that set aside earlier judgments terminating mother's and father's parental rights (TPR judgments). We conclude that the juvenile court did not abuse its discretion by setting aside the TPR judgments, and, therefore, we affirm.

We begin by recapping the lengthy procedural history of the case. A, now four years old, has been in DHS custody and substitute care since she was two days old. The juvenile court took jurisdiction over A several months after her birth, in September 2010. In July 2011, the juvenile court entered a permanency judgment changing A's permanency plan from reunification to adoption. Both parents appealed from that permanency judgment, and we affirmed without opinion. *Dept. of Human Services v. B. R.*, 247 Or App 766, 274 P3d 315, *rev den*, 351 Or 678 (mother's petition), and *rev den*, 351 Or 761 (father's petition) (2012). DHS filed petitions to terminate mother's and father's parental rights in August 2011. Approximately one year later, in August 2012, the court held the annual permanency hearing required by ORS 419B.470(6) and entered a permanency judgment continuing the permanency plan of adoption for A. Both parents appealed from that judgment, *see Dept. of Human Services v. M. H.*, 258 Or App 83, 308 P3d 311 (2013).

The juvenile court subsequently held a 12-day termination trial, after which the juvenile court terminated both parents' parental rights and entered judgments to that effect in March 2013. Both parents appealed from the TPR judgments.

Approximately five months later, we issued *M. H.* In that appeal, DHS conceded that the court had erred in failing to include the "compelling reasons" findings required by ORS 419B.476(5)(d) and ORS 419B.498(2)(b).[1] *M. H.*, 258 Or App at 88. However, DHS argued that that error was harmless because those findings "are relevant only to *when*

---

[1] We set out the relevant portions of those statutes below. 266 Or App at 366.

the adoption and termination proceedings should occur" and the termination proceedings had already occurred. We concluded that the error was not harmless because "[a]doption and termination proceedings cannot occur until there is a necessary predicate permanency judgment." *M. H.*, 258 Or App at 89 (emphasis in original). We further noted that,

> "[h]ad the juvenile court rendered * * * a [predicate permanency] judgment, complete with findings relevant to the timing of adoption and termination proceedings, those [termination and adoption] proceedings might have been deferred, giving parents more of an opportunity to demonstrate their progress. That demonstration, in turn, could have had an effect on the outcome of the adoption and termination proceedings."

*Id.* Thus, we reversed and remanded the second permanency judgment as to A.[2] Both parents then moved, under ORS 419B.923,[3] to set aside the TPR judgments, and we held the parents' appeal of the TPR judgments in abeyance pending resolution of that motion.

After a hearing in December 2013, the juvenile court granted the parents' motions to set aside the TPR judgments. In doing so, the juvenile court noted, based on our decision in *M. H.*, that "you can't proceed with a termination case when you have an invalid permanency judgment[.]" The juvenile court rejected DHS's argument that it could rely on the first permanency judgment entered by the court. DHS and A appealed. That appeal of the court's order vacating the TPR judgments is now before us.

On appeal, we review the legal questions presented by the parties, underlying the trial court's ruling setting aside a judgment pursuant to ORS 419B.923 for legal error. *Dept. of Human Services v. A. D. G.*, 260 Or App 525, 534, 540, 317 P3d 950 (2014).

---

[2] That appeal also concerned the permanency judgment for A's sibling, V, who is not a party to this appeal.

[3] ORS 419B.923 provides, in relevant part, that "the court may modify or set aside any order or judgment made by it."

DHS's first argument on appeal is that, even if an earlier permanency judgment continuing a case plan of adoption is reversed on appeal, nothing in the juvenile code or, more specifically, the statutes governing termination of parental rights proceedings (ORS 419B.500 to 419B.524), "makes a permanency judgment changing a child's case plan to adoption a necessary predicate for terminating parental rights."[4] That is, DHS argues that a termination of parental rights proceeding is separate from the underlying juvenile dependency case, and nothing in ORS 419B.500 to 419B.524 requires a "valid" permanency judgment before parental rights may be terminated.

It is helpful to begin with an overview of the relevant law governing permanency hearings and termination of parental rights proceedings. Once the juvenile court has taken jurisdiction over the child, it must conduct permanency hearings at regular intervals based on the child's circumstances, *i.e.*, not less than annually, or upon request of the parent, agency, child's attorney, CASA, citizen review board, tribal court, or on its own motion. ORS 419B.470. That statute "evinces the specific policy objective that children not be left indefinitely in a placement limbo, and it also more generally reflects a child-centered policy orientation to the dependency process." *State ex rel Juv. Dept. v. F. W.*, 218 Or App 436, 468-69, 180 P3d 69, *rev den*, 344 Or 670 (2008). The juvenile code contemplates that multiple permanency hearings may be held in any dependency case. *See, e.g.*, ORS 419B.470(6) ("After the initial permanency hearing * * *, the court shall conduct subsequent permanency hearings not less frequently than once every 12 months for as long as the child or ward remains in substitute care.").

---

[4] The parties do not dispute that the juvenile court had authority to set aside the TPR judgments. ORS 419B.923(1) ("Except as otherwise provided in this section, on motion and such notice and hearing as the court may direct, the court may modify or set aside *any order or judgment* made by it." (Emphasis added.)); ORS 419B.923(7) ("A motion under [ORS 419B.923](1) * * * may be filed with and decided by the trial court *during the time an appeal from a judgment is pending before an appellate court*." (Emphasis added.)); *A. D. G.*, 260 Or App at 535 ("Although the legislature specified three reasons for setting aside a judgment [in ORS 419B.923(1)] * * * that list is not exclusive. * * * [W]e conclude that the examples in ORS 419B.923(1) do not circumscribe the broad discretion that [ORS 419B.923(1)] otherwise bestows on a juvenile court [to modify or set aside any order or judgment made by it].").

ORS 419B.476(2)(b), governing permanency hearings, provides, as relevant here:

"(2)   At a permanency hearing the court *shall*:

"(b)   If the case plan *at the time of the hearing* is something other than to reunify the family, determine whether the department has made reasonable efforts to place the ward in a timely manner in accordance with the plan \* \* \* and to complete the steps necessary to finalize the permanent placement."

(Emphases added.)

Thus, the juvenile court must consider the circumstances *at the time of the permanency hearing* to determine whether DHS made reasonable efforts to place the ward in accordance with the plan, in an effort to move toward the goal of permanent placement for the child. In cases such as this, where the case plan at the time of the hearing is adoption, the term "reasonable efforts" denotes "DHS's reasonable efforts to find a[n adoptive] placement for the child." *Dept. of Human Services v. C. L.*, 254 Or App 203, 211-12, 295 P3d 72 (2012), *rev den*, 353 Or 445 (2013).

ORS 419B.476(5) provides, as relevant to this case:

"The court shall enter an order within 20 days after the permanency hearing. \* \* \* [T]he order *shall* include:

"(a)   The *court's determination required under subsections (2)* and (3) of this section, including a brief description of the efforts the department has made *with regard to the case plan in effect at the time of the permanency hearing*;

"(b)   The court's determination of the permanency plan for the ward that includes whether and, if applicable, when:

"\* \* \* \* \*

"(B)   The ward will be placed for adoption, and a petition for termination of parental rights will be filed;

"\* \* \* \* \*

"(d)   If the court determines that the permanency plan for the ward should be adoption, the court's determination of whether one of the circumstances in ORS 419B.498 (2) is applicable[.]"

(Emphases added.) Thus, in a case such as this, the court must enter an order within 20 days after each permanency hearing that is held pursuant to ORS 419B.470, and make specific findings in the order, including (1) the court's determination whether, considering circumstances *at the time of the hearing*, DHS has made reasonable efforts to find the child an adoptive placement, (2) the court's determination that the permanency plan should change to or remain adoption and, having made that determination, (3) whether and when the child will be placed for adoption and the petition for termination of parental rights filed. ORS 419B.476(5)(b)(B). The court must also make a related determination: "whether one of the circumstances in ORS 419B.498 (2) is applicable[.]" ORS 419B.476(5)(d).

The requirement in ORS 419B.476(5) that the juvenile court make the determination under ORS 419B.498(2) after a permanency hearing reflects that "the legislature has expressed its intent that the trial court carefully evaluate DHS's decision to change a permanency plan for a child in order to ensure that the decision is one that is most likely to lead to a positive outcome for the child." *State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 183, 205 P3d 36 (2009). That "child-centered * * * determination" under ORS 419B.498(2) requires the court to determine "whether it is in the child's best interests *not* to file a petition for termination because the child can be returned home within a reasonable time." *C. L.*, 254 Or App at 214 (emphasis added). We apply that principle to permanency hearings regardless of whether the juvenile court changes or *maintains* a permanency plan. To that end, we have explained that

> "[t]he consequence of a *decision to maintain* a permanency plan implicates the same calculation of what may lead to a positive outcome for the child as a decision to impose a plan in the first instance. In either case, the court must decide between competing options: maintain the status quo or change it. The need to 'carefully evaluate' the situation is the same."

*Dept. of Human Services v. T. H.*, 254 Or App 394, 400, 294 P3d 531 (2012) (emphasis added).

To ensure that the careful evaluation of the child's permanency plan occurs after each hearing, we have held invalid permanency judgments that lacked the findings and determinations required by ORS 419B.476(5), regardless of whether the court was *changing* or *maintaining* a permanency plan. *Dept. of Human Services v. H. P.*, 252 Or App 346, 351, 287 P3d 1175 (2012) (noting litany of cases in which permanency judgments have been reversed and remanded based on the lack of the required findings under ORS 419B.476(5)); *see, e.g., T. H.*, 254 Or App at 400 (reversing permanency judgment that *continued* the permanency plan of another planned permanent living arrangement because it lacked the findings under ORS 419B.476(5)(a) and (f)); *Dept. of Human Services v. L. B.*, 246 Or App 169, 175, 265 P3d 42 (2011) (reversing permanency judgments that changed the children's permanency plans to adoption because the judgments did not include findings required by ORS 419B.476(5)(d) and ORS 419B.498(2)(b); explaining that reversal was required because "the legislature has manifested its intent that a juvenile court expressly connect all of the dots along the way to a change in the permanency plan").[5]

Thus, ORS 419B.470 and ORS 419B.476(5) require that the juvenile court conduct permanency hearings at regular intervals, potentially holding multiple permanency hearings over the course of a dependency case. The requirements in ORS 419B.476(2)(b) and ORS 419B.476(5) that the juvenile court consider the child's circumstances *at the time of the hearing* relating to findings and determinations of the permanency plan indicate that those specific findings are required after *each* permanency hearing held by the juvenile court, to capture the child's current circumstances, regardless of whether the juvenile court changes or maintains a permanency plan.

We turn to examine the statutes governing termination of parental rights proceedings, beginning at ORS

---

[5] By contrast, we have concluded that a permanency judgment lacking the related determinations of whether or when the child will be placed for adoption and when the TPR petition will be filed, required by ORS 419B.476(5)(b)(B), is not necessarily facially defective, unlike other findings required by ORS 419B.476(5). *Dept. of Human Services v. T. R.*, 251 Or App 6, 16-17, 282 P3d 969, *rev den*, 352 Or 564 (2012).

419B.498. The process to terminate a parent's parental rights begins with "fil[ing] a petition." ORS 419B.498(1), (2); ORS 419B.500 ("The parental rights of the parents * * * may be terminated * * * only upon a petition filed by the state or the ward * * *." (Emphasis added.)). When a child has been in substitute care under DHS's responsibility for 15 of the most recent 22 months, DHS is required to petition to terminate parental rights unless a statutory exception applies. ORS 419B.498(1), (2). The relevant portions of ORS 419B.498 provide:

"(2) The department shall file a petition to terminate the parental rights of a parent in the circumstances described in subsection (1) of this section unless:

"* * * * *

"(b) There is a compelling reason, which is documented in the case plan, for determining that filing such a petition would not be in the best interests of the child or ward. Such compelling reasons include, but are not limited to:

"(A) The parent is successfully participating in services that will make it possible for the child or ward to safely return home within a reasonable time as provided in ORS 419B.476 (5)(c);

"(B) Another permanent plan is better suited to meet the health and safety needs of the child or ward, including the need to preserve the child's or ward's sibling attachments and relationships; or

"(C) The court or local citizen review board in a prior hearing or review determined that while the case plan was to reunify the family the department did not make reasonable efforts or, if the Indian Child Welfare Act applies, active efforts to make it possible for the child or ward to safely return home[.]

"(3) *No petition to terminate the parental rights* of a child or ward's parents pursuant to subsection (1) of this section or pursuant to ORS 419B.500, 419B.502, 419B.504, 419B.506 or 419B.508 *may be filed until the court has determined that the permanency plan for the child or ward should be adoption after a permanency hearing pursuant to ORS 419B.476.*"

(Emphases added.)

To further ensure that the juvenile court carefully evaluates a child's permanency plan at the permanency hearing stage before it can order DHS to move forward with the termination-of-parental-rights process, we have interpreted ORS 419B.498(3) to mean that the juvenile court's "approval of a permanency plan of adoption is a *precondition to the filing of a termination petition.*" *State v. L. C.,* 234 Or App 347, 357, 228 P3d 594 (2010), *rev dismissed,* 349 Or 603 (2011) (emphasis added) (discussing ORS 419B.498(3) and holding that the court erred in changing the permanency plan to adoption and, based on that error, also erred by ordering DHS to file a petition to terminate the father's and the mother's parental rights); *accord Dept. of Human Services v. W. H. F.,* 254 Or App 298, 306 n 6, 295 P3d 78 (2012), *rev den,* 353 Or 428 (2013) (explaining that, in the event of a reversal of a permanency judgment *continuing* a permanency plan of adoption—based on a lack of statutorily required findings—that reversal of the permanency judgment "would invalidate the subsequent termination judgment"). *But see State ex rel Dept. of Human Services v. J. S.,* 225 Or App 115, 135, 200 P3d 567, *rev den,* 346 Or 157 (2009) (declining to exercise discretion to review as plain error and correct juvenile court's error in holding termination hearing without having held permanency hearing, based on the children's interests, lack of harm demonstrated by parents, and higher substantive and procedural standards that occurred in termination hearing).

The legislative history of ORS 419B.498(3) supports that interpretation. Senator Kate Brown, one of the proponents of Senate Bill (SB) 408 (2007), which later became ORS 419B.498(3), stated that the purpose of adding subsection (3) to ORS 419B.498 was to "prohibit[] [DHS] from filing a petition to terminate parental rights for the *sole* reason that the child has been in substitute care for 15 of 22 months unless the court has previously determined that the plan for the child should be adoption" and to ensure that TPR petitions are not filed in cases in which no adoptive resources had been or are likely to be identified by DHS. Audio Recording, Senate Committee on Judiciary, SB 408, May 2, 2007, at 20:38 (statement of Senator Kate Brown), https://olis.leg.state.or.us (accessed Oct 7, 2014) (emphasis in original).

Given that backdrop, we readily reject DHS's first assertion that, even if an earlier permanency judgment continuing a case plan of adoption is reversed on appeal, nothing in the juvenile code or, more specifically, the statutes governing termination of parental rights proceedings (ORS 419B.500 to 419B.524), "makes a permanency judgment changing a child's case plan to adoption a necessary predicate for terminating parental rights." DHS's argument, based on ORS 419B.500 to 419B.524, expressly ignores important context relating to termination proceedings, namely ORS 419B.498(3). That statute was enacted to ensure that DHS could not move forward with the termination-of-parental-rights process unless the juvenile court had made the "careful evaluation" of the permanency plan, and that, the juvenile court's "approval of a permanency plan of adoption is a *precondition to the filing of a termination petition.*" *L. C.*, 234 Or App at 357 (emphasis added).

DHS next asserts that the text of ORS 419B.498(3) demonstrates that that subsection was intended only to ensure that the juvenile court approve a case plan of adoption before DHS petitioned to terminate parental rights. We understand DHS to argue that, because the court made the determinations required by ORS 419B.476(5) and ORS 419B.498(2) in the first permanency judgment, and filed the TPR petition after that judgment was entered, the invalidation of the second permanency judgment is of no import, because DHS has still complied with ORS 419B.498(3).

A makes a related assertion, contending that the requirement in ORS 419B.498(3)—that a judgment establishing a permanency plan of adoption entered after a permanency hearing must precede the filing of a petition for termination of parental rights—impacts only the *filing* of the petition. Thus, according to A, because the TPR petition in this case was filed based on the first, valid permanency judgment, the reversal of the second permanency judgment did not affect DHS's ability to move forward with the termination proceedings.

DHS's second contention leads to the same result. As discussed above, ORS 419B.470—requiring multiple permanency hearings—and ORS 419B.476(5)—requiring statutory

determinations to be based on current circumstances—when read in conjunction, require the juvenile court to make the statutory determinations after *each* permanency hearing, thus ensuring that the most recent permanency plan reflects existing circumstances at the time of the most recent hearing. That requirement, in turn, must inform the statutes governing termination petitions. Again, as discussed above, the termination statutes direct that the termination process does not begin until the filing of a termination petition, *e.g.*, ORS 419B.500, which cannot be filed until the court makes the statutory determinations relating to the child's permanency plan, ORS 419B.498(3). When read together, we are lead to conclude that it is the juvenile court's *most recent* permanency plan determination, based on current circumstances, that permits DHS to proceed with a termination-of-parental-rights petition. *See L. C.*, 234 Or App at 357 (holding that the juvenile court also erred by ordering DHS to file a termination petition because the court erred in changing the permanency plan to adoption).

We similarly reject A's related assertion that the requirement in ORS 419B.498(3) impacts only the *filing* of the petition. A's proffered construction would make the requirement that the juvenile court render specific findings relating to its permanency plan determination after each hearing meaningless. That is, if, as A proposes, DHS had the ability to file a TPR petition after one permanency judgment, and move forward with termination proceedings regardless of any subsequent permanency plan determinations—or, as in this case, a subsequent decision by a higher court reversing a later permanency judgment—the requirement that the court carefully evaluate the permanency plan after each hearing would have no effect on the termination proceedings. However, as we explained above, the purpose of the statutorily required findings reflects the legislature's intent that the court carefully evaluate the child's present circumstances and the court's determination of the appropriate permanency plan based on the evidence presented to the court at that permanency hearing. If, as A asserts, the requirement of a permanency plan determination after each hearing affected only the filing of the petition, but did not affect the remainder of the process to terminate a parent's

parental rights, the court would have the authority to move forward with the process to terminate a parent's parental rights without having made the current evaluations of the permanency plan.

Finally, DHS argues that, even if we were to hold that the reversal of a permanency judgment invalidates a subsequently entered TPR judgment—for the reason that that judgment lacks the required findings under ORS 419B.476(5) and ORS 419B.498(2)—our conclusion would not assist the parents in this case because the permanency judgment that we reversed in *M. H.* did not *change* the plan to adoption, but merely *continued* the plan of adoption that had previously been approved.

We likewise reject that final assertion. Our case law does not distinguish between permanency judgments *continuing* or *changing* a permanency plan: "the legislature has expressed its intent that the trial court carefully evaluate DHS's decision to change a permanency plan," *M. A.*, 227 Or App at 183, and we extended that principle to apply to judgments entered after permanency hearings in which the juvenile court *maintained* or *continued* a permanency plan because "[t]he consequence of a decision to maintain a permanency plan implicates the same calculation of what may lead to a positive outcome for the child as a decision to impose a plan in the first instance. * * * The need to 'carefully evaluate' the situation is the same." *T. H.*, 254 Or App at 400.

In deciding the parents' ORS 419B.923 motion to set aside the TPR judgments, the court determined that, based on the circumstances of this case, our holding in *M. H.* required that it set aside the judgments. The juvenile court did not err. *A. D. G.*, 260 Or App at 534.

Affirmed.