Argued and submitted April 18, affirmed July 25, petition for review denied
November 8, 2012 (352 Or 665)

In the Matter of
A. L. A., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. C. A.,
aka T. C. M.,
*Appellant.*

Lane County Circuit Court
08193J;
Petition Number 08193J01;
A150003

283 P3d 956

Andrew D. Coit argued the cause for appellant. With him on the brief was Coit & Associates, P.C.

Laura S. Anderson, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Mother appeals from a judgment that changed the permanency plan for her child AA from adoption to "another planned permanent living arrangement" (APPLA).[1] Previously, the juvenile court terminated mother's parental rights to both AA and another son, AF,[2] but we reversed the termination of parental rights as to both children and remanded the case to the juvenile court. *Dept. of Human Services v. T. C. A.*, 240 Or App 769, 248 P3d 24 (2011). On remand, while the permanency plan of adoption was still in effect, mother requested a permanency hearing to change the plan to "reunification." The Department of Human Services (DHS) sought to change the plan to APPLA. At the conclusion of the permanency hearing, the court changed the plan to APPLA, and mother appeals from the resulting judgment.[3] Mother not only challenges that change in plan but also contends that DHS failed to comply with the requirements of OAR chapter 413, division 70, when developing APPLA as the recommended plan. We affirm.

Although mother asks us to review this case *de novo*, we decline to do so because mother fails to offer any compelling reason to support her request. ORAP 5.40(8)(c) (stating that such requests are disfavored, that there is a presumption against the exercise of *de novo* review, and that we exercise such review only in "exceptional cases"). Accordingly, "we review the juvenile court's legal conclusions for errors of law but are bound by its findings of historical

---

[1] APPLA is

"a permanency plan for a stable secure living arrangement for a child or young adult that includes building relationships with significant people in the child's life that may continue after substitute care. APPLA is the least preferred permanency plan of the four permanency plan options for a child or young adult and is appropriate only in very limited circumstances."

OAR 413-070-0524(1).

[2] AA and AF have different fathers. All references in this opinion to "father" are to AF's father, as AA's father has not established a legal relationship with him.

[3] The petition to terminate father's parental rights to AF was denied by the juvenile court at the end of the termination trial in 2010. The permanency hearing that is the subject of this appeal was consolidated as to AA and AF. At the end of the hearing, the court approved a stipulated judgment that vacated the commitment of AF to the legal custody of DHS and placed AF in the physical custody of father. Mother appeals only from the permanency judgment for AA.

fact if there is any evidence in the record to support them." *Dept. of Human Services v. N. S.*, 246 Or App 341, 344, 265 P3d 792 (2011), *rev den*, 351 Or 586 (2012). We state the facts consistently with the juvenile court's express and implied findings, supplemented by uncontroverted information in the record. *See State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010).

The facts leading up to the termination trial are set forth in detail in *T. C. A.*, 240 App at 772-79. For purposes of this appeal, we briefly recount some of the background before describing events since the termination trial.

The children were removed from mother and father's care in 2008 after the two adults were arrested in a police raid of their marijuana grow operation. The children were placed in substitute care with mother's aunt, who served as their foster parent through the termination trial. Mother admitted, among other things, that her substance abuse presented a threat of harm to the children. Mother completed substance abuse treatment in 2008, but later began using heroin. After failing a urinalysis (UA) test in 2009, she entered residential treatment and was prescribed Suboxone, a medication that decreases opiate cravings and prevents opiate highs, but can prove dangerous if used in combination with alcohol. Mother was discharged from residential treatment in June 2009 and planned to attend outpatient treatment.

Meanwhile, DHS pursued termination of mother's parental rights. In July 2009, the juvenile court changed the permanency plan for AA and AF to adoption, and DHS filed a petition to terminate mother's parental rights to the children, which the court granted and mother appealed. While mother's appeal was pending, AA was moved to Alabama to live with his maternal grandmother, who had been identified as the adoptive resource.

We reversed the termination of mother's parental rights, concluding that DHS had failed to prove by clear and convincing evidence that integration of the children into mother's home was improbable within a reasonable time due to conduct or conditions not likely to change. *Id.* at 780-81. In short, we determined on *de novo* review that the evidence

at the termination trial showed that mother had the skills to be a good parent if she remained sober and that, although she had relapsed, she had shown some progress in treatment. Expert testimony demonstrated that she "may well be able to resume caring for the children in a period ranging from six to 18 months." *Id.* at 780. We reversed because DHS had failed to "meet its burden to prove that it was improbable that mother would be able to provide a safe home for the children in that timeframe" and the record was devoid of evidence regarding how such a delay would affect the children's emotional and developmental needs. *Id.* at 781.

After we issued our decision in *T. C. A.*, the juvenile court held a permanency and disposition review hearing in March 2011. After that hearing, the court entered an order that imposed a number of requirements on mother to participate or cooperate with particular services and to maintain safe and stable housing, but did not change the permanency plan from adoption. The court issued another order in July 2011, requiring mother to continue to comply with all previous orders and to undergo a psychological evaluation, which she did the following month. The court held a permanency hearing in September, at which mother asked that the plan be changed from adoption to reunification with mother, and DHS requested that the plan be changed to APPLA in the form of permanent foster care with AA's maternal grandmother.

At the permanency hearing, mother introduced evidence that, since the time of the termination trial, she has successfully undergone further substance abuse treatment, that her psychological evaluation revealed no severe or serious mental illness or personality disorder, and that, when mother is sober she has the skills to be a "great parent." Mother also admitted that she had consumed alcohol on occasion in violation of her treatment program, including shortly before the permanency hearing, and that she failed to disclose that information to her treatment provider or DHS. The evidence also revealed that mother had failed to maintain stable housing in the period leading up to the permanency hearing, and various other issues surfaced involving mother's dishonesty, including incidents of driving with a suspended license and providing false

information on rental and food stamp applications. The evidence showed that AA was thriving in his placement with grandmother and had expressed his desire to remain there.

At the conclusion of the permanency hearing, the court ruled that there were compelling reasons why it would not be in the best interests of AA to be returned to mother, placed for adoption, placed with a legal guardian, or placed with a fit and willing relative, and that the permanency plan should be changed to APPLA. In particular, the court determined that mother had not made sufficient progress to make it possible for AA to safely return home, that adoption was not possible, and that the maternal grandmother was unwilling to serve as legal guardian.

The court made extensive oral findings, explaining why other placement options were not appropriate and concluding that

> "[t]he child has been in foster care for 29 months. He requires stability and consistency. Mother has had the opportunity and has engaged in services for three years and still has not made sufficient progress to be able to parent her child at this time. Although she engaged * * * numerous service providers, she continues to be unable or unwilling to make good choices. Testimony during the trial indicated that mother continues to drink despite potential life-threatening consequences. Further, mother has failed to sustain stable housing. It is necessary to continue the ward in substitute care because it is not appropriate to return the ward home or to take prompt action to secure another permanent placement at this time."

(Internal numbering and citations omitted.) However, the court also directed DHS to develop a plan that "provides for regular, meaningful, substantial contact and visitation between mother and [AA], both in Alabama and—when appropriate—in Oregon * * * [and] counseling between mother and [AA]." Further, the court expected the plan to "allow regular and meaningful contact between [AA] and other members of the extended family in Oregon and Alaska[.]"

The court concluded by stating, "I don't know where this is headed. But I want to make sure [AA] has every opportunity to have a meaningful, important, healthy relationship with [mother], and that DHS was—is expected to do what it can and should do to ensure that."

We begin with the statutory framework that governs this case. DHS asserts that ORS 419B.476(2)(b) applies because the case plan at the time of the permanency hearing was adoption. That statutory provision states that, at a permanency hearing, the court shall,

"[i]f the case plan at the time of the hearing is something other than to reunify the family, determine whether the department has made reasonable efforts to place the ward in a timely manner in accordance with the plan, including, if appropriate, reasonable efforts to place the ward through an interstate placement, and to complete the steps necessary to finalize the permanent placement."

ORS 419B.476(2)(b) (emphasis added).

In contrast, mother's first argument on appeal is that DHS failed to make reasonable efforts to reunite mother and AA and that DHS failed to prove that mother's progress was insufficient to allow AA to be safely placed in her care. Those standards are located in ORS 419B.476(2)(a), which states that the court shall,

"[i]f the case plan at the time of the hearing is to reunify the family, determine whether the [d]epartment *** has made reasonable efforts *** to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns."

In her appellate brief, mother does not dispute that the permanency plan at the time of the hearing was adoption, not reunification, and she does not explain why she believes that the "reasonable efforts" and "sufficient progress" standards in ORS 419B.476(2)(a) should nevertheless apply in a case where reunification was not the plan at the time of the hearing. However, she argued before the trial court and again on appeal that a "necessary implication" of our opinion

reversing the termination of mother's parental rights in *T. C. A.* was that DHS was required to make reasonable efforts to reunify mother and AA.

We reject mother's argument. Nothing in our decision in *T. C. A.* explicitly or implicitly changed the permanency plan to reunification nor did it otherwise make ORS 419B.476(2)(a) applicable where the permanency plan was something other than reunification. Mother provides no other cogent reason, and we are aware of none, for importing ORS 419B.476(2)(a) into this case. Accordingly, ORS 419B.476(2)(b) governed the juvenile court's review of DHS's efforts.

Nevertheless, even in a case such as this, where the permanency plan at the time of the hearing is something other than reunification and DHS is seeking a change in plan to APPLA, the juvenile court must examine whether it would be in the best interests of the child to be returned home or be placed in a more preferred permanency plan and, if it is not, offer a compelling reason for that decision. ORS 419B.476(5)(a) and (f) require the court, after a permanency hearing, to enter an order that includes its determination under ORS 419B.476(2)(b) and, if it determines that the plan for the ward should be APPLA, "the court's determination of a compelling reason, that must be documented by the department, why it would not be in the best interests of the ward to be returned home, placed for adoption, placed with a legal.] guardian or placed with a fit and willing relative[.]" We also note that ORS 419B.476(4)(c) authorizes the court during any permanency hearing to determine that further efforts will make it possible for the ward to safely return home within a reasonable time and, in such cases, to "order that the parents participate in specific services for a specific period of time and make specific progress within that period of time[.]"

Accordingly, the juvenile court was required to examine DHS's efforts under ORS 419B.476(2) and also determine if there was a compelling reason why it would not be in the best interests of the ward to be returned home or placed in accordance with a preferred permanency plan. We review the court's determination under ORS 419B.476(2) for legal error but are bound by its findings

of historical fact if there is any evidence in the record to support them. *N. S.*, 246 Or App at 341. However, as we recently explained in another context, we review the court's best interests determination in ORS 419B.476(5)(f) for an abuse of discretion. *See Sjomeling v. Lasser*, 251 Or App 172, 186-88, 285 P3d 1116 (2012) (noting that "'[i]t is also well-settled in Oregon that in making the determination of the best interests of the child, the trial judge is in a far better position to weigh the various factors which enter into the problem, and his decision should not lightly be disturbed by a court on appeal'" (quoting *Meier and Meier*, 286 Or 437, 446, 595 P2d 474 (1979); brackets in *Sjomeling*)). Under that standard, we will reverse only if the juvenile court's discretionary determination is not a legally permissible one. *Id.* at 187-88.

Under the circumstances presented here, we cannot say that the juvenile court committed error in determining that DHS made reasonable efforts to place AA in a timely manner in accordance with the permanency plan of adoption, and we cannot say that the court abused its discretion in determining that there were compelling reasons why it would not be in AA's best interests to be returned home, or placed for adoption or in another alternative permanent placement as required by ORS 419B.476(5)(f).

Mother does not challenge whether DHS's efforts to place AA for adoption were reasonable, but we note that DHS pursued termination of mother's rights, which is a prerequisite for adoption; given that the judgment terminating mother's rights was reversed, DHS could not pursue adoption further without a second attempt at termination. As to the court's decision to change the permanency plan to APPLA, the court determined that a return home was not in AA's best interests because mother lacked safe and stable housing, she continued to consume alcohol even though her treatment plan prohibited it and her consumption presented potential health risks associated with her Suboxone prescription, and evidence of mother's dishonesty and instability prevented the court from concluding that her recovery was as successful as she presented it to be. The facts found by the juvenile court in support of its determination are supported by the record and

the juvenile court's determination that a return home was not in AA's best interests was within the range of legally discretionary choices.

In addition, the court determined that the alternative placements described in ORS 419B.476(5)(f) were not available despite DHS's efforts and noted that, by all accounts, AA was thriving in his placement with his maternal grandmother, that his behavior and development had markedly improved, and that he wished to remain in that placement. We cannot say that it was an abuse of discretion for the court to conclude as a consequence that an alternative placement was not in AA's best interests.

Finally, we address mother's second assignment of error. She contends that DHS failed to comply with the administrative rules that govern APPLA as a permanency plan and that the juvenile court abused its discretion when it approved the change in plan without requiring DHS to do so. Accordingly, she asserts that we should remand with instructions to change the permanency plan to reunification. Because we conclude that DHS complied with the applicable rules, we do not address whether the relief requested by mother would be appropriate if DHS had failed to comply with those rules.

The administrative rules that govern DHS's approval and implementation of APPLA as a permanency plan are extensive, but mother's challenge is limited to three areas. Specifically, mother asserts that (1) DHS's composition of a permanency committee under OAR 413-070-0518(1) was faulty, (2) the caseworker did not comply with the requirement in OAR 413-070-0550(5)(d) that the caseworker, at the permanency hearing, "[s]et forth the reasonable services the Department may offer each parent to meet the best interests of the child or young adult until a more preferred permanency plan is achieved," and, (3) in contravention of OAR 413-070-0551(1), the APPLA case plan neglected to include descriptions of why APPLA was the most appropriate permanency plan, how relationships with relatives and caregivers will be developed while the child is in substitute care, and the services required to make it possible to achieve a more preferred permanency plan.

Mother also contends that the case plan was not signed by all the appropriate persons.[4]

DHS responds, and our review confirms, that it complied with the administrative rules. DHS points to caseworker testimony at the permanency hearing regarding the steps the agency took in determining that APPLA was the best plan for AA, as well as the fact that the permanency committee convened and decided that APPLA was the most appropriate plan. Further, the case plan at the time of the hearing contained services and conditions for mother, as did an action plan that was provided to mother in March 2011 and signed by her in July 2011. In response to mother's claims that the case plan was deficient because it lacked information, DHS maintains that the case plan going into the permanency hearing and an amended case plan that was introduced at the hearing both contained "conditions for return," which summarized for mother what she needed to do to establish a basis for a recommendation that the plan be changed to reunification.

Mother's concerns about the inadequacy of the APPLA plan and DHS's decision-making process do not stand up in the face of the caseworker's testimony, the conditions in the plan that provide specific expectations for mother, and the juvenile court's direction to DHS to continue to develop a plan that ensures meaningful contact between mother and AA as well as AA and other extended family.

Affirmed.

---

[4] We reject without further discussion mother's challenge to DHS's composition of the permanency committee and the lack of appropriate signatures on the case plan. We write only to address mother's remaining procedural challenges.