No. 232                    April 17, 2024                    25

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of C. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. H.,
*Appellant.*

Clackamas County Circuit Court
22JU02272; A181606

Cody M. Weston, Judge.

Submitted January 9, 2024.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Holly Telerant, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Stacy M. Chaffin, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Father appeals from a juvenile court order directing the Oregon Department of Corrections (DOC) to disclose his mental health records to the Department of Human Services (DHS) for use in dependency proceedings involving father's child, C.[1] In a single assignment of error, father argues that the court erred in issuing that order because DHS failed to establish that his mental health records, which were generally protected under federal and state law,[2] were necessary or relevant to the purpose for which DHS sought their disclosure. We conclude that, under the circumstances of this case, father has not provided a basis on which we could reverse the juvenile court's order based on a lack of statutory authority to issue the order. Further, DHS complied with its own rule to "limit requests to those that are reasonably necessary to accomplish the purposes for which the request is made." OAR 407-014-0040(5). Thus, we affirm.

The juvenile court asserted jurisdiction over C, who was then about seven years old, pursuant to ORS 419B.100, on two admitted bases: that father was convicted of second- and third-degree sex abuse of a minor child and that father was incarcerated (with an anticipated release from DOC custody in 2026) and unavailable as a custodial resource.[3] The case plan at jurisdiction was reunification of C with mother and father. About seven months later, the court issued a review judgment indicating that father "ha[d] not made sufficient progress," that C "c[ould] not be *** safely returned to father's care," and that there was a concurrent

---

[1] "A final order adversely affecting the rights or duties of a party and made in a proceeding after judgment" is a judgment and is appealable. ORS 419A.205 (1)(d); *see also* ORS 419A.200(1) (appellate review of such orders is mandatory).

[2] The Health Insurance Portability and Accountability Act of 1996 (HIPAA) and its implementing regulations, including 45 CFR Parts 160 and 164, protect the privacy and confidentiality of health information. *See* 42 USC §§ 1320d-2, 1320d-4 (establishing that protection); *see also* 45 CFR § 164.512 (providing standards of use and exceptions to the disclosure prohibition); ORS 179.505(2) (protecting "written accounts of the individuals served by any health care services provider," "unless otherwise permitted or required by state or federal law or by order of the court"); ORS 192.558(2)(b) (same); ORS 179.495(1) (same).

[3] The jurisdictional bases also included that mother was "the subject of a criminal investigation for alleged sexual abuse of [C] and alleged sexual exploitation of children" and was "unable to be a custodial resource." Mother is not a party to this appeal.

plan for C's adoption. DHS was unable to obtain information concerning father's participation in services at DOC, though it had learned that he had been housed in what DOC staff referred to as a "specialized behavioral unit."

DHS then moved for the order at issue, requiring DOC and associated institutions to disclose father's records, including protected health information, for use at the pending permanency hearing. The motion specifically sought disclosure of any and all diagnoses, treatment, and assessment records concerning father. In the motion and its accompanying memorandum, DHS asserted, among other things, that father's mental health records were "the minimum necessary to enable the court to plan for [C]" and to make the findings required under ORS 419B.476 at the permanency hearing.[4] DHS argued that, despite HIPAA's general protection of such records, it authorizes such disclosures, which are also authorized under Oregon law. DHS relied on, among other legal provisions, 45 CFR section 164.512(e)(1)(i), ORS 179.505, and ORS 192.558, all of which indicate that otherwise protected information is disclosable pursuant to a court order.[5]

During a hearing on DHS's motion, father argued that DHS had "set forth [no] basis upon which to disclose these specifically protected records" and suggested that "the standard for disclosure of [such] information should be particularly high," though he did not identify a particular standard to be applied. DHS argued that it "need[ed] the records

---

[4] ORS 419B.476(2)(a) requires that, if the case plan at the time of a permanency hearing is to "reunify the family," the court "shall," "at the hearing," determine whether DHS has made "reasonable efforts *** to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home." Even when the case plan "is something other than" reunification, the court still must determine whether DHS "has made reasonable efforts to place the ward in a timely manner in accordance with the plan." ORS 419B.476(2)(b).

[5] Under 45 CFR section 164.512(e)(1)(i) "[a] covered entity may disclose protected health information in the course of any judicial *** proceeding *** [i]n response to an order of a court." Likewise, ORS 179.505(2) provides that an individual's otherwise protected health information, including medical, dental, or psychiatric treatment written accounts maintained in or by facilities of DOC, can be disclosed when "required by state or federal law or by order of the court." ORS 192.558(2)(a) and (b), similarly, provide that DOC "[m]ay *** disclose protected health information of an individual without obtaining an authorization from the individual *** [a]s otherwise permitted or required by state or federal law or by order of the court."

to do case planning" and explained that, because the current plan was reunification, DHS was required to "make reasonable efforts toward[] reunification." It maintained that it needed the records to determine what services had already been offered to father or what services were needed to continue a plan of reunification. The court inquired if "relevance" was the proper legal standard for deciding the motion, and DHS responded that neither federal nor Oregon law specifies a standard for such disclosures and suggested that the court apply the relevance standard. Father did not offer an alternative.

DHS permanency case worker Arlen Craig testified to the following: (a) that father first agreed to a release of information but later rescinded it; (b) that in addition to learning that father was placed in a "specialized behavioral unit," Craig heard other concerning things from DOC staff, including that father was "not allowed to be around other people," which raised concerns for Craig; (c) that DHS had "refused to allow" father to have visitation with C because C was listed as either a victim or a witness to a prior crime committed by father; (d) that DHS sought but was unable to obtain any information about father's participation in services while at DOC beyond the fact that he had a counselor; (e) that DHS needed the information to understand father's circumstances, decide what services could be offered to "help mitigate" safety concerns and coordinate services, as part of assessing what plans could be made for reunification; and (f) that obtaining father's mental health information would also help DHS decide whether to work to facilitate in-person visits with C.

Father stated that he was "more than willing" to let DHS know about his participation in classes "and everything like that" but was not willing to release the mental health records because, according to him, "there [wa]s no reason" for DHS to have "any" of those records.

The juvenile court granted DHS's motion, issuing a qualified protective order which concluded that the requested disclosure was proper and that the records requested were "the minimum necessary to assist the court in planning for [C] and making the necessary findings at the permanency

hearing(s)." The order required, among other things, that DOC and the other institutions identified in DHS's motion disclose to DHS all records regarding father's mental health diagnoses, treatment, and assessment.[6]

On appeal, father renews his challenge to DHS's claimed need for his mental health records. He argues that DHS failed to establish that his records, protected under HIPAA and Oregon law, were "necessary or relevant" to the purpose identified in its motion. DHS acknowledges that father preserved his HIPAA argument but contends that he failed to preserve his argument that Oregon law prevented disclosure of the records. DHS argues that, in any event, on the merits, both HIPAA and Oregon law authorized the disclosure, that Oregon law did not prohibit it, and that the juvenile court did not abuse its discretion in ordering the disclosure.

We begin with preservation and conclude that father preserved his argument regarding Oregon law. Appellate courts generally will not review a claim of error that was not preserved in the lower court. ORAP 5.45(1). Nevertheless, "a short-hand reference, such as a single word or phrase, *** used in a way and context in which the other parties and the court would understand that the word or phrase refers to a particular legal or factual argument, and also would understand from that single reference the essential contours of the full argument" is sufficient to preserve a claim for appeal. *See State v. Haynes*, 352 Or 321, 335, 284 P3d 473 (2012).

Here, as DHS pointed out, father did not expressly mention the Oregon statutes during his arguments below. However, during the motion hearing, father's argument that DHS had "set forth [no] basis upon which to disclose these specifically protected records" was made in response

---

[6] The court's order prohibited the use of the disclosed information "for any purpose other than [the respective] juvenile dependency proceeding." Furthermore, the order required that "[c]opies of any of the records furnished to another person for purposes of representation of a party must be returned to the party that provided the record at the conclusion of the matter," except for disclosures required by law to satisfy legal disclosures under the Rules of Professional Conduct and to satisfy the Professional Liability Fund and DHS's right under the public record retention requirement.

to DHS's claim of court authority in its motion and accompanying memorandum, which included ORS 179.505 and ORS 192.558. Within that context, father's reference to the "basis" of DHS's argument was sufficient to give DHS and the juvenile court notice that father was challenging the legal bases of DHS's full argument. That reference was sufficient to preserve father's challenge on appeal.

We turn to the merits of father's argument, which includes three main points. He first contends that DHS did not demonstrate why the information whose disclosure he offered to authorize, regarding only the fact of his participation in and completion of services, would not be sufficient to allow DHS to make decisions regarding visitation and case planning, particularly given that he would not be imminently functioning as C's caregiver due to his long-term incarceration. Second, father argues that DHS did not demonstrate how his mental health records would impact visitation, given that those visits would be "supervised by necessity" due to his incarceration status. Third, father disputes that providers would need his mental health information in order to work with him. We are not persuaded.

As father concedes, both federal and Oregon law allow for disclosure of protected records in response to a court order. *See* 45 CFR § 164.512(e)(1)(i) ("A covered entity may disclose protected health information in the course of any judicial or administrative proceeding *** [i]n response to an order of a court[.]"); *see also* ORS 192.558(2)(b) (providing the same exception); ORS 179.505(2) (same). We recognize that none of those laws provide an evidentiary standard for the court to use in making such an order.[7] And, although

---

[7] Under 45 CFR section 164.502(b), a "minimum necessary" standard applies to covered entities, such as DOC, for the use or disclosure of protected health information. That standard, however, does not apply to covered entities making a disclosure pursuant to court orders, such as the order at issue. *See* 45 CFR § 164.502(b)(2)(v) (providing that the "minimum necessary" standard does not apply to "disclosures that are required by law, as described by § 164.512(a)"); *see also* 45 CFR § 164.512(a) (covering disclosures "required by law"); 45 CFR § 164.103 (the term "[r]equired by law includes, but is not limited to, court orders"). The absence of a standard that applies to court orders makes sense because the federal and Oregon laws are directed at the entities holding the protected information and inform those entities when they may make a disclosure, such as in response to a court order. Those laws do not directly apply to the authority of a court to make an order.

those laws simply do not prohibit such orders rather than affording authority to order disclosure, we nevertheless conclude that court authority is not at issue here. To the contrary, we agree with the court's apparent assumption that it could order DOC to disclose father's protected health information as part of the juvenile proceeding in the absence of a source of law limiting or prohibiting it from doing so. *See* ORS 419B.893 - 419B.902 (allowing subpoena for documents to nonparties).[8] Father does not present us with an argument on which we could reverse the court's order based on the court lacking statutory authority to issue the order.

Despite the apparent absence of statutory authority that directly limits a juvenile court order to disclose protected information or that sets the standard to which the court is bound, there is an administrative rule that appears to place limits on DHS in seeking such protected information. DHS concedes in its brief that it is bound by OAR 407-014-0040(5), which provides:

> "When requesting protected information about an individual from another entity, [DHS] shall limit requests to those that are reasonably necessary to accomplish the purposes for which the request is made. [DHS] shall not request a person's entire medical record unless [DHS] can specifically justify the need for the entire medical record."

To resolve whether DHS complied with that apparent limitation here, we need to first resolve the standard of review we must apply to the court's decision to order DOC to disclose father's protected health information, given our conclusion that father has not identified a basis for us to conclude that it lacked statutory authority to issue the order. We recognize that we have stated that we review for legal error whether a juvenile court "ha[d] authority to make a particular order" and, where the court has such authority,

---

[8] We note that, in the ordinary course, a party seeking documents from a third party would issue a subpoena to the third party to disclose those documents. *See* ORS 419B.896; ORS 419B.899; ORS 419B.902. The third party then would have the opportunity to object to the disclosure, which could include an argument that federal or state law prohibit the disclosure. At that point, the parties may seek juvenile court resolution of the dispute by court order. However, no one has raised a challenge to the procedure used here in which DHS moved directly for a court order without first issuing a subpoena for the records and receiving an objection. As a result, we express no opinion on that procedure.

"we review the juvenile court's dispositional order for an abuse of discretion." *Dept. of Human Services v. T. B.*, 326 Or App 192, 194, 531 P3d 718, *rev den*, 371 Or 476 (2023). However, in *T. B.*, we cited *Dept. of Human Services v. T. C. A.*, 251 Or App 407, 414-15, 283 P3d 956, *rev den*, 352 Or 665 (2012), for the abuse of discretion standard. In turn, *T. C. A.* stated only that an abuse of discretion standard applies to a juvenile court's best interest of the child finding under ORS 419B.476(5)(f). The order at issue in *T. B.* also included a juvenile court's best interest finding in a different context. *T. B.*, 326 Or App at 198. Thus, we do not read either *T. C. A.* or *T. B.* to stand for a general proposition that we will review any order for an abuse of discretion as long as the juvenile court had statutory authority to issue the order.

Here, although we do not understand statutory authority to be at issue, whether DHS complied with the standard in OAR 407-014-0040(5), and thus was entitled to an order requiring DOC to disclose father's records, involves a question of law because it states a legal standard that binds DHS, but it is a question that arises in highly fact-specific circumstances. As a result, we apply our usual standard of review for dependency proceedings. Because father has not requested *de novo* review, and we conclude that this is not an exceptional case warranting such review, ORS 19.415(3)(b); ORAP 5.40(8)(c), we view "the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the [juvenile] court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Based on those standards, we turn to father's substantive arguments, which raise issues about whether DHS was entitled to his records under the factual circumstances of this case, and we conclude that, on this record, DHS's request complied with OAR 407-014-0040(5), which binds DHS to limiting its requests "to those that are reasonably necessary to accomplish the purposes for which the request is made." More specifically, we agree that father's mental health records were "reasonably necessary" for the purposes identified by DHS in its motion—"for use in the permanency

hearing[],” to allow DHS to meet its burden to show that it complied with the requirements of ORS 419B.476 and the court to make the necessary determinations under that same statute. Under ORS 419B.476, at each permanency hearing, where the case plan is reunification with the ward’s family, DHS must demonstrate that it had made reasonable efforts “to make it possible for the ward to safely return home.” ORS 419B.476(2)(a). That statute further requires that in assessing DHS’s burden, the court “shall” make the respective “reasonable efforts” determination and “shall” also determine “whether the parent has made sufficient progress to make it possible for the ward to safely return home.” *Id*. Moreover, “[i]n making its determination, the court shall consider the ward’s health and safety the paramount concerns.” *Id*.; *see also Dept. of Human Services v. S. W.*, 267 Or App 277, 286, 340 P3d 675 (2014) (“the mere fact of a parent’s incarceration does not excuse DHS from making the reasonable efforts required by [ORS 419B.476(2)(a)]”).

Here, as the court concluded, father’s mental health records were “important information for DHS to have” and “the minimum necessary” under ORS 419B.476(2)(a) to assist the court in planning for C’s safe return to father’s care after father’s release from incarceration. First, DHS showed that such information was “important” for DHS to have. DHS provided evidence that to meet its reasonable-efforts burden, DHS would need father’s mental health records to assess what services could help father to ameliorate the bases of jurisdiction, which was incarceration for child sex abuse. *See Dept. of Human Services v. D. M. R.*, 301 Or App 436, 444, 455 P3d 599 (2019) (to meet its reasonable-efforts burden, DHS shall “focus on ameliorating the adjudicated bases for jurisdiction”). DHS’s evidence showed that C may have been a witness to father’s crimes and that DOC had placed father in a “behavioral unit” and did not allow father “to be around other people,” and that DHS was unaware of the underlying reasons for DOC doing so. Under those circumstances, it was reasonably necessary for DHS to seek more detailed information about father’s mental health beyond information about what services DOC provided to him. That information would allow DHS to assess which services DHS could offer to best help

father with mitigating the consequences of his convictions and incarceration and to ensure that it was safe for C to be around father. *See Dept. of Human Services v. K. G. T.*, 306 Or App 368, 375, 473 P3d 131 (2020) (DHS's "reasonable efforts [burden] should be evaluated in view of the nature of the parent's problems"); *see also* ORS 419B.476(2)(a) ("the ward's health and safety [is] the paramount concerns" of the reasonable-effort's determination).

Contrary to father's arguments that his mental health information was not necessary to meet DHS's burden given his incarceration status, DHS's reasonable-efforts burden is not diminished based on father's incarceration and DHS would still need the disputed information to meet its reasonable-efforts burden. *See K. G. T.*, 306 Or App at 375-76 (DHS's reasonable-efforts burden applies "over the life of the case," regardless of a parent's incarceration).

Second, father's mental health records were likewise reasonably necessary to assist the court in making the ORS 419B.476(2)(a) reasonable-efforts and sufficient-progress findings for the permanency hearing. In making that assessment, the court would need to determine whether DHS was able to help father "ameliorat[e] [the] adjudicated bases for jurisdiction." *See Dept. of Human Services v. H. K.*, 321 Or App 733, 746, 517 P3d 1044 (2022). That assessment would further require the court to determine whether DHS gave father a "reasonable opportunity to demonstrate [his] ability to adjust [his] conduct and become [a] minimally adequate parent[]," including helping father to mitigate any issues related to his conviction that could impact the safety of C, who was a witness to father's underlying crimes. *Id.* Consequently, the court would need to know what problems father was going through to assess whether DHS addressed any concerns that would affect the jurisdictional bases, thus justifying its order.

Moreover, because father's mental health could possibly affect whether C could be safe around him, his mental health information was reasonably necessary to allow the court to prioritize C's "health and welfare" in assessing DHS's reasonable efforts. *Dept. of Human Services v. M. G. J.*, 326 Or App 426, 434, 532 P3d 905, *rev den*, 371 Or 476

(2023) (at a permanency hearing in a juvenile dependency proceeding, the juvenile court "gives the highest priority to [C]'s health and welfare"). In the context of father's circumstances, the court would need father's information to make C's welfare assessment. In doing that, the court would need to assess not only whether DHS provided adequate services but also the extent to which father benefited from any services. *See K. G. T.*, 306 Or App at 381 (requiring the court to "engage in a cost-benefit-like analysis * * * tied to the goal of providing the parent, over the life of the case, with a reasonable opportunity to demonstrate improvement, if not ameliorate the jurisdictional bases"). Accordingly, the court would need the disputed information to assess whether father had problems that required intervention for the court to assess whether DHS provided or failed to provide adequate services to father and to assess benefits of any services.

In sum, father has not presented us with an argument on which we can conclude that the juvenile court erred in ordering DOC to disclose father's mental health records for the limited purpose of using those records to satisfy ORS 419B.476 requirements at the permanency hearing.[9]

Affirmed.

---

[9] Our decision in the present case should not be understood to indicate that protections to an individual's mental health records do not apply to DHS. We emphasize that a court and DHS must not ignore the procedural steps provided by federal and state law for DOC's and other entities' disclosure of protected information regarding an adult in custody, including but not limited to, any applicable provisions under 45 CFR section 164.512 and ORS 419B.893 to 419B.902.